FEDERAL LAND BANK OF SPOKANE, Appellant, *v.*
GALLATIN COUNTY et al., Respondents.

(No. 6,378.)

(Submitted January 14, 1929. Decided February 2, 1929.)

[274 Pac. 288.]

*Mr. C. C. Rowan,* for Appellant, submitted a brief, and argued the cause orally.

102

*Mr. Walter Aitken,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in equity instituted to correct error committed in foreclosure proceedings resulting in damages to the plaintiff in consequence of the sale on execution of certain real estate in Gallatin county. The defendants Gallatin County, Charles Scollard, and Geo. K. Clarke as receiver

of the Home State Bank, appeared and filed a joint special and general demurrer to the plaintiff's complaint. Such demurrer having been by the court sustained, judgment was thereupon entered in favor of the demurrants dismissing plaintiff's complaint as to them with their costs, from which the plaintiff has appealed.

The only question presented is as to the sufficiency of the complaint to state a cause of action. Plaintiff's amended complaint filed in the action, to which the demurrer is directed, is very voluminous. Summarized briefly so as to make the facts alleged understandable as a preface to our determination, it appears that on August 17, 1923, the plaintiff loaned to the defendants William S. Wade and Ethel A. Wade, husband and wife, $11,000 on their promissory note secured by a real estate mortgage, duly recorded September 4, 1923, covering a tract of land in Gallatin county comprising 480 acres; "that the plaintiff made said loan to said defendants and accepted said note and security of said mortgage solely because said premises and improvements were used and mortgaged as one parcel or farm, and would not have made said loan except for its reliance upon the fact that said land and each and every part thereof, as well as each and every part of the buildings upon said premises, was given by said defendants and accepted by plaintiff as security for each and every part of said loan and indebtedness."

Subsequently the defendant Home State Bank of Manhattan obtained a second mortgage upon the same land, and before the foreclosure sale hereinafter mentioned such bank became insolvent, and at the time of the sale was in the hands of the defendant Geo. K. Clarke as receiver. In October, 1925, the mortgagors being in default under the provisions of the plaintiff's mortgage, the same was placed in the hands of its attorneys for foreclosure according to law, with directions to make bid in plaintiff's behalf for the entire amount due. Such attorneys filed an action to foreclose the mortgage in the district court of Gallatin County in October, 1925, but

did not allege that the mortgage was executed upon the land as a unit, and did not ask that the land be sold as a single tract, although when the mortgage was executed, long prior thereto, and now, the mortgaged premises comprised one contiguous tract or farm, with one set of buildings for the entire ranch. All defendants in the action having defaulted, and their default having been duly entered, the cause was brought on for trial in March, 1926, and the attorneys representing the plaintiff made proof therein "and caused a decree and judgment of foreclosure to be made, signed and filed. * * * At such hearing last aforementioned, * * * such proof showed all of said land described in said mortgage as one tract or farm, mortgaged to plaintiff to secure one indivisible indebtedness, and that there was no proof whatever offered to show that such land could be, or was subdivided, or consisted of more than one parcel, and no proof whatever to authorize the court to order said property sold in any other manner than as one single and sole tract or parcel of land to pay the said indebtedness, * * * therefore the court found at such hearing and trial, and intended to incorporate as a part of its decree therein, an order to the sheriff * * * to sell said land, and the whole thereof, in one tract or parcel," the language of the decree in this respect being as follows: "That all and singular the mortgaged premises mentioned in the complaint * * * or so much thereof as may be sufficient to raise the amount due the plaintiff for the principal and interest, costs and attorneys' fees, money expended under the terms of said mortgage, and the costs of suit and expense of said sale, and which may be sold separately without material injury to the parties interested, be sold at public auction by the sheriff of Gallatin county, Montana, in the manner prescribed by law and according to the rules and practice of this court, and that said sheriff issue his certificate of sale therefor, and after the time for redemption has expired execute a deed to the purchaser or purchasers of said mortgaged premises on sale."

It is then alleged: "That said court intended by its said language, 'in the manner prescribed by law and according to the rules and practice of this court,' and did mean to say, and that this court should so declare the language of said decree to mean, 'be sold at public auction by the sheriff of Gallatin county, Montana, *in one parcel* in the manner prescribed by law and according to the rules and practice of this court,' and that the language of said decree shows that said court intended that said land should be sold in one parcel, for such decree authorizes only one certificate of sale to be issued by said sheriff." A certified copy of the decree was placed in the hands of the sheriff for execution, and the property was thereupon advertised for sale and sold on April 10, 1926. On or about March 22, 1926, plaintiff's attorneys advised plaintiff that the defendant William S. Wade had demanded that the land be sold in separate parcels of 40 and 80 acre tracts, and that it was therefore necessary to so sell according to law. That plaintiff's officers, acting upon such advice of its attorneys, and believing the same to be correct, acting under a mistake of law as to the plaintiff's rights in the matter, thereupon instructed its attorneys and agents to make bid for it at the sale for the full amount due upon the mortgage, and in bidding on such 40 and 80 acre tracts to take into consideration the value and location of the buildings on the premises. That at such sale the defendant William S. Wade was not present in person to demand that the sale be made of separate tracts, but that the defendant Geo. K. Clarke, receiver of Home State Bank, was present in person, and then and there, believing that the law required the sheriff to sell the property in 40-acre tracts upon demand of such receiver, the sheriff sold the land on the tenth day of April, 1926, in separate 40 and 80 acre tracts instead of selling same as one piece or parcel as required by law and the decree of the court. The 40-acre tract on which the buildings and improvements valued at $4,000 are located was separately sold to the plaintiff for the sum of $1,600, whereas it should have

sold for the sum of $5,600, its proportionate value of the entire tract. "That the plaintiff's said attorneys and plaintiff permitted said sale to be made in separate parcels instead of in one tract, solely because of their mistake of law as to the rights of the plaintiff, and believing that said receiver had a right to require the sale in separate forty and eighty acre tracts; that such mistake of law was concurred in by said receiver, and said receiver believed that such sales were required to be made in separate parcels upon his demand; that the plaintiff did not learn of its rights under the law, and learn as to what the law was upon such sale until about the month of March, 1927, and that plaintiff thereupon immediately tendered back to said receiver the amount of $1,705.08 with interest," which had been transmitted to the plaintiff after the defendant Geo. K. Clarke, as receiver of the Home State Bank, on or about October 28, 1926, had made redemption of the 40-acre tract with the improvements thereon, which tract with the improvements on the land was worth $5,600, and should have been bid in for that amount but for the mistake made by the plaintiff's attorneys, and each of the other tracts of land were also bid in by plaintiff's attorneys for more than their proportionate value, if the separate tract upon which the improvements are located is subject to separate redemption.

It is alleged: "That said purported redemption of said forty-acre tract aforementioned by said Geo. K. Clarke, Receiver of Home State Bank, was not a legal redemption, and was and is null and void for the reason that said receiver never duly and legally, or in any other manner, obtained an order of the court appointing him as receiver, authorizing him to redeem said forty acre tract of land, and never secured any authority whatever from the court to take any steps whatever with reference to said purported redemption, and did not use receivership funds therefor."

It is further alleged: "That subsequent to the commencement of this action and about April 29, 1927, said Geo. K.

Clarke, Receiver of Home State Bank, a corporation, attempted to sell and assign to the defendant Gallatin county, a municipal corporation, all his right, title and interest in said purported redemption, and in and to said forty-acre tract of land * * * and executed a written transfer thereof, which said transfer was thereupon filed in the office of the clerk and Recorder of Gallatin county, at Bozeman, Montana, and attached to said purported certificate of redemption and certificate of sale; that such purported transfer was fraudulent and made by said receiver to conceal his lack of authority in pretending to redeem said property and to defeat the plaintiff's rights and equities, and in an attempt to transfer illegally claims to another person, and to defeat the plaintiff's rights thereby; that Gallatin county, a municipal corporation, was not, and is not now, and never has been, a redemptioner, or one entitled to redeem said forty-acre tract under the provisions of the laws of the state of Montana; that said Gallatin county was not the holder of a second mortgage on said property, and that if it has invested any money whatever in said forty-acre tract, it has invested only $1,705.08 paid to said sheriff, or to said receiver for said receiver's rights, and that said Gallatin county has no other right, title, interest or equity whatever therein, and should not be permitted to redeem said forty-acre tract, nor said buildings, and that said Gallatin county has not parted with anything of value whatever in acquiring its purported rights from said receiver excepting the moneys which plaintiff hereby tenders into court to be paid to said receiver, Gallatin county, or such other persons as are entitled thereto.''

It is further alleged: "That neither Geo. K. Clarke, Receiver of Home State Bank, Gallatin county, Montana, nor any other person will be injured or damaged in any amount whatever, or to any extent by cancellation and annulment, of said foreclosure action herein referred to, or said sheriff's sale, certificates of sale, and redemption deed, but that justice will be done thereby, and that both plaintiff and defend-

ant, Geo. K. Clarke, as receiver, and all other persons whomsoever, will be restored to their rights as they existed at all times prior to April 10, 1926, and to which they are entitled, and that defendants, Geo. K. Clarke, as such receiver, and Gallatin county, a municipal corporation, will have all the right, title, claim, lien, and equity to which they were or are entitled, and that neither said receiver, nor any other person, has ever paid or parted with any consideration or value whatever in enhancing the value of the right of redemption to said forty-acre tract above described as hereinbefore set forth; and that in equity and justice, said receiver, nor said Gallatin county, should not be permitted to hold or redeem or acquire said forty-acre tract of land and the buildings thereon because of his inducing said sheriff to sell said premises illegally, and because of the mistake of law of plaintiff's said attorneys in not foreclosing said mortgage as instructed by plaintiff.'' As to the plaintiff's attorneys in the foreclosure action, made defendants in the present action, it is alleged: ''That it does not believe its said attorneys have any sufficient property from which it could collect its loss, or any part thereof.''

By the present action the plaintiff seeks to set aside, not only the sale of the 40-acre tract upon which the improvements are located, but also all proceedings in the foreclosure action; or, if it be deemed unnecessary or improper to annul and cancel the proceedings in the foreclosure action, plaintiff prays that by the decree all proceedings therein subsequent to the entry of the decree of foreclosure be vacated.

In our opinion the ruling and judgment of the trial court are correct, as the complaint does not state a cause of action on any theory. It is contrary to the most fundamental principles of law that the plaintiff should be accorded equitable relief because of its own mistakes occasioned by its direction or acquiescence in the judgment entered in settlement of its rights, resulting subsequently in a sale of the property on execution in manner agreeable to it.

It clearly appears from the complaint that the sheriff's sale was conducted on April 10, 1926, separate tracts being offered for sale and sold as requested, without objection, and that the several certificates covering the entire tract were then delivered to the plaintiff as the successful bidder; that on October 8, 1926, the defendant Geo. K. Clarke, receiver of the Home State Bank, having learned that the buildings were all on the one 40-acre tract, made redemption thereof for the amount for which it had been sold, and on or about October 18, 1926, the sheriff executed and delivered a certificate of redemption to him, and thereupon the money paid was turned over to the plaintiff; but it alleges that it "would not have accepted such redemption money from the sheriff if it had known the buildings belonging to said premises were all located on said forty-acre tract," and that it did not learn the facts until about November, 1926, about which time (date not shown) the plaintiff tendered back to the receiver the money so paid by him in redemption of the property and demanded a release of the redemption, which was refused. No attempt was made to amend the judgment in the foreclosure action, and the plaintiff continued to slumber on its rights from April 10, 1926, to November, 1926, a period of more than six months, without making any demand or taking any action whatsoever to protect its rights in the foreclosure action. Subsequently this action was commenced, the date not being shown by the record, although the amended complaint appears to have been filed on June 1, 1927. The plaintiff through its attorneys chose its own methods of bidding at the sheriff's sale on their own basis of appraisement, and, if mistake was made, it was of law, and is chargeable to the plaintiff alone.

The following fundamental maxims of jurisprudence would seem to deny to the plaintiff relief: "The law helps the vigilant, before those who sleep on their rights." (Sec. 8756, Rev. Codes 1921.) "One must not change his purpose to the injury of another." (Id., sec. 8741.) "Any one may waive the advantage of a law intended solely for his benefit." (Id.,

sec, 8742.) "He who consents to an act is not wronged by it." (Id., sec. 8744.) "Acquiescence in error takes away the right of objecting to it." (Id., sec. 8745.) "He who can and does not forbid that which is done on his behalf is deemed to have bidden it." (Id., sec. 8748.) "He who takes the benefit must bear the burden." (Id., sec. 8750.) "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Id., sec. 8772.) Application of these maxims alone to the facts should suffice to demonstrate that the plaintiff has not shown itself entitled to the relief sought.

While under authority of section 9187 of the Revised Codes of 1921, the court may "upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect; provided, that application therefor be made within reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken"; yet this section has no application to mistakes of law or ignorance thereof. (*Mantle* v. *Casey*, 31 Mont. 408, 78 Pac. 591; *Donlan* v. *Thompson Falls Copper & Milling Co.*, 42 Mont. 257, 112 Pac. 445; *Canning* v. *Fried*, 48 Mont. 560, 139 Pac. 448.)

It is clear that the plaintiff took no action to relieve itself from the alleged mistake until after the lapse of more than six months, so that it would be barred by this statute, were the mistake to be considered one of fact. "Every person is bound to take care of his own rights, and to vindicate them in due season, and in proper order. This is a sound and salutary principle of law." (*Dunne* v. *Yund*, 52 Mont. 24, 155 Pac. 273.)

"A party does not relieve himself of the charge of neglect merely by placing his case in the hands of an attorney. The negligence or unskilfulness of an attorney is imputed to his client, and it is well established that, in the absence of fraud or unfairness of the adverse party, equitable relief can-

not be obtained on such grounds alone." (Freeman on Judgments, 5th ed., sec. 1253.) The selection of the attorneys upon whose advice the foreclosure proceedings were had and the property sold on execution was not induced by the respondents. It is apparent from the allegations of the plaintiff's complaint that there was no mistake of fact on plaintiff's part. It knew that it held a first mortgage upon the land; that it was entitled to foreclose such mortgage, and delivered the mortgage to attorneys of its choice, to be foreclosed according to law, and with directions to bid for the property at execution sale the full amount found to be due the plaintiff. Its only mistake, if any, was in accepting the opinion of its attorney that the land should be offered for sale and sold in 40 or 80 acre tracts. "It is undoubtedly the true rule that neither the ignorance, the blunders nor the misapprehension of counsel, not occasioned by the adverse party, is any ground for vacating a judgment or decree." (15 Cal. Jur., p. 24; 34 C. J., p. 465; Freeman on Judgments, 5th ed., sec. 1253; Black on Judgments, 2d ed., sec. 375; *Donlan* v. *Thompson Falls Copper & Milling Co.*, supra; *Donovan* v. *Miller*, 12 Idaho, 600, 10 Ann. Cas. 444, 9 L. R. A. (n. s.) 524, 88 Pac. 82; *Amestoy Estate Co.* v. *City of Los Angeles*, 5 Cal. App. 273, 90 Pac. 42.) And in the last-cited case the facts are quite similar to the case now before us. In that case the court well said: "The judgment is conclusive, unless it is shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has presented a fair submission of the controversy. (*Fealey* v. *Fealey,* 104 Cal. 360, 43 Am. St. Rep. 111, 38 Pac. 49.)" The negligence of an attorney is attributable to the client, and the negligence, mistake, or unskilfulness of an attorney in handling his client's business is not generally justification for equitable relief, more especially where, as here, the client's case has proceeded to judgment and sale of property on execution under the attorney's guidance and direction. Manifestly, there would be no end to litigation were the rule otherwise.

In dealing with the subject, Mr. Justice Hatch of the appellate division of the supreme court of New York, speaking for the court, said: "If the negligence of an attorney, his incompetence or his mistake as to the law could be made the basis of interfering with solemn judgments and vested rights long after they have been secured, it is safe to say that no judgment and no adjudication could ever be said to be finally composed. It is the exception that in incessant litigation between parties the rights of either are ever fully and completely protected. Negligence and incompetence, mistakes of law, omissions to object to testimony, neglect to make a proper motion or take an exception may each and all operate to defeat a party's right and work injustice. Neither courts nor lawyers are infallible, nor do they at all times hew to the line of full and complete performance of duty. And if it be settled that the failure to discharge obligations assumed may be made the basis for overturning judgments and opening decrees instead of composing litigation, it will swell its flood." (*Reich* v. *Cochran*, 105 App. Div. 542, 94 N. Y. Supp. 404.)

If there was error in the decree, it should have been amended in the action according to section 9187, Revised Codes 1921. No matter at whose request or why the land was offered for sale and sold in 40-acre tracts, the fact is that it was so sold with the plaintiff's knowledge and acquiescence. Plaintiff's attorneys made bid on the land in separate parcels according to their own preconceived notions as to the proper way to apportion the debt, and certificates were issued for each of the several tracts to the plaintiff; and, if error was committed, the plaintiff itself is at fault, and is not entitled to equitable relief.

That mere mistakes of law are not remediable is well established, and, what exceptions there may be to the rule, they will be found few in number, and to have something peculiar in their character, and to involve other elements of decision. (*Hunt* v. *Rousmanier*, 1 Pet. 15, 7 L. Ed. 27;

*Bank of United States* v. *Daniel,* 12 Pet. 32, 9 L. Ed. 989; *Norum* v. *Ohio Oil Co.,* 83 Mont. 353, 272 Pac. 534.)

Chancellor Kent says: "The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of law. Every man is to be charged at his .peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind. And, to permit a subsequent judicial decision in any one given case, on a point of law, to open or annul everything that has been done in other cases of the like kind, for years before, under a different understanding of the law, would lead to the most mischievous consequences. Fortunately for the peace and happiness of society, there is no such pernicious precedent to be found." (*Lyon* v. *Richmond,* 2 Johns. Ch. (N. Y.) 51; *Norum* v. *Ohio Oil Co.,* supra.)

A basic principle of equity jurisprudence is, as crystallized into our statute above quoted, that equity aids the vigilant, and not those who slumber on their rights. "Nothing can call into activity a court of equity but conscience, good faith, and reasonable diligence." And generally equity will not afford relief to those who refuse or neglect to take care of themselves. (10 R. C. L., p. 388.)

However, plaintiff's counsel contends that the receiver of the Home State Bank was without authority to redeem the land in question, since it was done without authority of court and was in the nature of an investment of trust funds. In the complaint it is alleged that, at the time of the sale under the decree of foreclosure, the Home State Bank was the holder of a second mortgage upon the 480-acre tract of land, but that the purported redemption by the receiver is void for the reason that the receiver never obtained an order of court authorizing him to make such redemption. Suffice it to say that the plaintiff is in no position to make complaint in this respect, as it is not shown to have been interested in the assets of the insolvent bank as a creditor, stockholder, or otherwise.

A receiver is an officer of the court appointing him, and impartially holds the assets of the insolvent entrusted to his care and keeping for the benefit of creditors and others interested therein, but one who is in no manner interested in such assets will not be heard to complain respecting the receiver's methods of administering the trust. The appointment of a receiver does not give a mere stranger rights in the receivership proceeding, nor may he be heard to complain with respect to the expenditure of assets in the receiver's hands; more especially so, where as here, the only purpose is to gain an individual advantage. "It is the receiver's duty actively to reduce to his possession the assets of the estate over which he is appointed, in pursuance of the order of the court in that respect; he should take possession of the property and retain it until otherwise ordered by the court, and protect it for the benefit of all parties interested, and not for the benefit of third persons." (34 Cyc., p. 252.) It is as much the duty of a receiver, in administering an estate, to protect valid preferences and priorities as to make just distribution among general creditors. (23 R. C. L., p. 70.) "And in the handling of the trust estate in his possession, a receiver should exercise the same degree of discretion which an ordinarily prudent man of business would exercise in the management of his own affairs." (High on Receivers, 4th ed., sec. 177.) Therefore, under this allegation of the complaint, the plaintiff is not entitled to the equitable relief sought.

The general demurrer to the complaint was properly sustained, and accordingly the judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Ford and Angstman concur.