[Civil No. 2853.   Filed January 27, 1930.]

[284 Pac. 159.]

GEORGE W. AVERY, Appellant, v. CALUMET & JEROME COPPER COMPANY, a Corporation, Appellee.

Messrs. O'Sullivan & Morgan, for Appellant.

Mr. J. E. Russell, Mr. John A. McGuire, Mr. R. B. Westervelt and Mr. Perry M. Ling, for Appellee.

McALISTER, J.—On December 14th, 1928, George W. Avery filed suit against the Calumet & Jerome Copper Company on thirty-seven promissory notes aggregating in principal and interest $41,620.02, for $4,160 attorney's fees, and for the foreclosing of two mortgages given to secure the same, one real, the other chattel. On January 9th, 1929, a default judgment for the amount claimed was rendered, and on May 4th thereafter the defendant's motion, filed

April 4th, 1929, asking that this judgment be set aside, was granted. From this order the plaintiff appeals.

It appears from the complaint that on August 4th, 1927, the Calumet & Jerome Copper Company executed to Lottie E. Avery and George H. Avery its note for $25,584.05, payable one year after date, with interest at seven per cent payable semi-annually, and if not paid when due to become a part of the principal, and that to secure the payment of this sum it made and executed on the same day a realty mortgage on all its interests in twelve patented mining claims situated in the Verde mining district in Yavapai county, Arizona, except six acres, and a chattel mortgage on its personal property located on these claims, including buildings, machinery and equipment. It appears further that the note and the mortgages were assigned to George W. Avery, plaintiff herein, on December 10th, 1928, and that no part of the principal of the note or of the interest which on December 1st, 1928, amounted to $2,367.82 had been paid. Both mortgages recite that they were given to secure, in addition to the foregoing note, any future advances that the mortgagees might make or cause to be made to the mortgagor for the payment of taxes, labor and salaries of officers, and for all other necessary debts incurred in connection with the mortgaged property for which new notes could be issued, and pursuant to this provision the complaint alleges that for this purpose the mortgagees did, between November 1st, 1927, and December 1st, 1928, advance or cause to be advanced to the mortgagor an aggregate sum of $13,668.15, including interest, and that for these advances and the accrued interest on said mortgage note the defendant corporation between such dates made thirty-six notes totaling $16,035.97 payable on demand, seventeen of them aggregating over $6,500 running to George W. Avery,

seventeen amounting to over $8,100 to George H. Avery, and two making over $1,300 together to Lottie E. Avery. This complaint was served on the statutory agent of the defendant in Yavapai county on December 15th, 1928, and no appearance being made a default judgment for $41,620.02, for $4,160 attorney's fees, and for costs was entered January 9th, 1929. Pursuant to this decree the sheriff sold at public sale on February 9th, 1929, for $30,000 the property covered by the real estate mortgage, on February 13th, 1929, for $1,000 the property covered by the chattel mortgage, and on February 25th, 1929, for $1,000 the Franklin patented mining claim in the same district, though not included in the mortgage, the plaintiff being the successful bidder in each instance.

On April 4th, 1929, Charles E. Hughes, in behalf of himself, all stockholders similarly situated, and the defendant itself filed a motion to set the judgment aside and a proposed answer to the complaint and as grounds therefor alleged in substance as follows: That he was a stockholder in the defendant corporation; that the judgment was taken through mistake, inadvertence, surprise and the excusable neglect of the defendant company; that a large percentage of the 3,000 stockholders of defendant reside outside of Arizona and had no actual notice of the pendency of the action prior to the rendition of the judgment; that no answer was filed by the board of directors upon whom the duty to appear and defend the action rested and that its default in this respect was due to the fact that it then, and during all the time in which the indebtedness forming the basis of the action was being incurred, was dominated and controlled by the plaintiff, its president, the other members thereof, except one, being his close relatives, namely, George H. Avery, his father, Charles F. Avery and J. W. Avery, his uncles, and Lottie E.

Avery, his wife; that the action was brought to se-·cure judgment by default, the express understanding among the directors being that no answer would be filed and this would be permitted; that there was no one except the local stockholders who had actual notice of the pendency of the action to appear therein; and that they took such steps as they deemed proper and sufficient to protect the interests of the company and themselves, but due to a misunderstanding between them and their counsel no answer was filed prior to the expiration of the time allowed therefor; that the stockholders and the company had a good and legal defense to the action as appears from the answer filed on behalf of him and the company.

From the affidavits of J. E. Russell, A. H. Whiteley and Charles E. Hughes in support of the motion to set the judgment aside, it appears that a meeting of a number of the local stockholders of the defendant company was held in Jerome, Arizona, on December 22, 1928; that an agreement was made by them at that time with J. E. Russell, R. B. Westervelt and Perry M. Ling, whereby the latter were to become their attorneys, and that they were to collect such funds as they could at once and turn them over to said attorneys for defending the action; that they collected $200 and handed it later to one A. H. Whiteley, who, though not present at the stockholders' meeting, was elected secretary-treasurer of such stockholders, but he did not pay it or any part of it to the said attorneys or anyone else prior to the entry of the default judgment, because he was not told before this had been done that it was to be used for this purpose, nor was he in fact given any instruction as to what disposition should be made of it; that the stockholders, thinking they had complied with their agreement and that an answer would be filed, took no further precaution, but relied on their attorneys to do this, and the latter having received

no funds believed that the stockholders had abandoned the idea of defending the action or secured other counsel and did not file an answer or even learn until the judgment had been entered that other counsel had not been employed, and that they were still expected to perform this service; otherwise they would have attended to it within the proper time.

In reply to the motion to set aside the judgment, the plaintiff filed a plea in abatement, demurred both generally and specially, and alleged certain facts as a further answer. He also interposed a general and a special demurrer to the answer tendered by Charles E. Hughes. All of these matters—the motion, the plea in abatement, and the demurrers—were argued and submitted on April 24th, 1929, and on May 1st following, before the court had ruled thereon, and without first obtaining formal leave of the court, Charles E. Hughes filed a supplementary affidavit in support of his motion in which the following statement, along with others, appears: "That he is a stockholder of record in the Calumet & Jerome Copper Company, defendant in the above entitled action, and has been such stockholder for a period exceeding ten years." On the same day plaintiff moved to strike this affidavit from the files, and three days later the court denied this motion and the plea in abatement, overruled the demurrers, granted the motion to set aside the default judgment, and permitted the answer tendered by Charles E. Hughes to be filed upon condition that the stockholders pay plaintiff all moneys actually expended by him in connection with the sheriff's sales. The money was paid into court, but refused by appellant.

The first assignment is that the court erred in denying the motion to strike the affidavit of Charles E. Hughes, and the basis for this contention is that additional evidence should not have been received or amendment of the original affidavit permitted

after the matter had been submitted for decision, unless the order of submission had been first set aside and the case reopened. The record does disclose that the affidavit was filed seven days after the case had been submitted, and that the court permitted this to be done without formally ordering the case reopened; but a denial of the motion to strike it and allowing it to remain as a part of the record was in effect a reopening of the case for this purpose, and since the appellant had an opportunity to be heard, even though he neither controverted the affidavit, nor requested time in which to do so in case his motion to strike should be denied, there is no question but that the affidavit was properly in the record. The matter had been heard without a jury and after submission rested entirely with the court, and if it felt that additional evidence on any issue was necessary before it could render a proper judgment, the right to reopen the case for this purpose, even of its own motion, existed, provided, of course, it gave both parties an opportunity to be heard.

Assignments two and three attack the orders overruling the appellant's general and special demurrers to the motion to set aside the judgment upon the ground that it was nowhere alleged that Charles E. Hughes was a stockholder in the defendant company "at the very time of the injuries complained of," or at the time of the rendition of the judgment. This defect in the motion and the original affidavit of Charles E. Hughes was cured in his supplementary affidavit filed May 1, 1929, which, it has just been held, was properly in the record.

It is contended that the demurrer should have been sustained upon the further ground that neither the motion nor the accompanying affidavits allege any mistake, inadvertence or negligence sufficient, as a matter of law, to authorize the court to set the judg-

ment aside because it appears therefrom that the failure to file an answer in time was due to the negligence of the attorneys engaged by the complaining stockholders, and under the authorities the mistakes and negligence of counsel, not occasioned by the adverse party, are attributable to the client, and therefore not ground for vacating the default judgment. The acts of counsel, it is true, are treated as the acts of the client, and while this rule sometimes results in hardship, it is necessary under our form of procedure. *Marshall* v. *Marshall,* 7 Okl. 240, 54 Pac. 461; *Irvin* v. *Dwight B. Heard Inv. Co.,* 35 Ariz. 528, 281 Pac. 213; *Federal Land Bank of Spokane* v. *Gallatin County et al.,* 84 Mont. 98, 274 Pac. 288. However, we are unable to see wherein counsel was guilty of inexcusable negligence, or in fact of negligence at all. They were at the stockholders' meeting on December 22d at which it was agreed that they would represent the minority stockholders, but funds were to be collected from the latter and turned over to them for this purpose, and the record discloses that while $200 was paid in by the stockholders, it was not given to them before the default judgment was entered, but was handed instead to A. T. Whiteley, who, though not at the meeting, was elected secretary-treasurer of the minority stockholders and held it until the default judgment had been rendered because, according to his affidavit, he was not advised that it was to be turned over to the attorneys, nor, in fact, given any information as to what use it was to be put. The stockholders, after paying in the money, thought it would be given to the attorneys and that they would file the answer, and the attorneys failing to receive the funds did not file it, but thought the stockholders had either changed their minds about answering or had secured other counsel. In this situation the attorneys were not obligated to proceed, though they did procure

a stipulation extending for three days the time for answering, hence the denial of the motion to set aside the judgment, in disregard of the contention that the attorneys were negligent, was not error.

Assignments four and five base error upon the order overruling the general and special demurrers to the answer tendered by Charles E. Hughes, and assignment 6 upon the order setting aside the default judgment, all upon the ground that the proposed answer set up or tendered no meritorious defense. The answer is quite lengthy, but it is unnecessary to state more of it than to say that the gist of it is that a majority of the board of directors of the defendant corporation, being composed of appellant as president and his close relatives, was dominated by him; that the defendant ceased active operations with $6,000 cash in its treasury in May, 1922, but notwithstanding it carried on no work thereafter, said board during that year and in 1923 voted unreasonably high salaries to the manager and secretary, positions filled by appellant and his father respectively, and paid the same out of said $6,000 until it was exhausted and thereafter by the execution of the notes and mortgages sued on; that no service whatever was rendered for said salaries, but that they were voted by appellant and other members of his family for the express purpose of creating an indebtedness against the defendant so large that it would eventually take from it all its property and that the notes and mortgages sued on were given in furtherance of this design; that in May, 1928, said board of directors, knowing it was unjust and illegal, pretended to approve an indebtedness of $2,880 for the rent of an office for the period of twelve years prior thereto; that the patented mining claims owned by defendant are worth in excess of $250,000 and the machinery and equipment thereon in excess of $50,000; that the salaries, accounts and claims of

George H. Avery, George W. Avery and Lottie E. Avery were approved only by a majority vote of those actually interested therein. These allegations, if true, would undoubtedly defeat a large portion of the claims sued on, if not all of them, and therefore constitute a meritorious defense.

Appellant contends, however, that since the action is one of equitable cognizance and the complaint is verified, the answer is wholly insufficient because it is predicated upon information and belief, is not properly verified, and does not attempt to refute the material allegations of the complaint. The verification is positive as to all the statements therein except those alleged on information and belief, and as to them a belief that they are true is expressed. The allegations upon which the complaint is based—the execution and delivery of the notes and mortgages sued on and the amount due and unpaid thereon—are denied upon information and belief, and appellant contends that this is not sufficient, but that such denial should have been positive, and since they are not, these allegations are taken as confessed under paragraph 477, Revised Statutes (Civil Code) 1913. This might be true if the answer went no further, but when it alleged additional facts showing that the notes were without consideration, the verification was sufficient, and it was not improper to allege upon information and belief the important facts necessary to defeat appellant's claim when they were known only to the latter and the other members of the board of directors. A minority stockholder, seeking to answer for the corporation because the directors upon whom this duty rests do not do so, cannot be barred from making a defense merely because he does not possess the definite knowledge of the directors.

In assignments seven and eight it is urged that the minority stockholders were guilty of inexcusable neglect, laches and delay in moving to set aside the

judgment, and hence that the court abused its discretion in granting the motion. The judgment was rendered January 9th, 1929, and the motion to set it aside made April 4th, following, the property in the meantime having been sold at three sheriff's sales upon special and general executions, the purchaser in each instance being the plaintiff. This, it is contended, shows upon its face that they were guilty of gross and inexcusable neglect and laches. It is, of course, true that the failure to use reasonable diligence in moving to set aside a default judgment, notwithstanding a meritorious defense may be shown, is good ground for refusing such relief. *Lewis* v. *Cunningham,* 10 Ariz. 158, 85 Pac. 244. However, the record discloses that on January 24th, 1929, the minority stockholders, through the attorneys appearing for them in this matter, filed an independent action in the superior court of Yavapai county in which they sought substantially the same relief as in this case, but that the court declined to grant it for the reason, it was stated at the oral argument, that they should have proceeded in the original action by moving that the judgment be set aside, which was done very soon thereafter. This shows that the minority stockholders, though wrong in the selection of their remedy, were not guilty of laches nor of delaying unduly the institution of proceedings to have the judgment set aside.

A motion of this kind is addressed to the sound discretion of the trial court, which means a legal and not an arbitrary discretion. *Lynch* v. *Arizona Enterprise Mining Co.,* 20 Ariz. 250, 179 Pac. 956; *Security Trust & Savings Bank* v. *Moseley;* 27 Ariz. 562, 234 Pac. 828; *Garden Development Co.* v. *Carlaw,* 33 Ariz. 232, 263 Pac. 625. And a consideration of the entire record—the showing by appellee as well as that in opposition thereto—convinces us

that in granting the motion in this instance the court did not act arbitrarily, but exercised the legal discretion the law has given it.

The judgment is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.