DEPARTMENT OF FINANCIAL INSTITUTIONS *v.* JOHNSON CHEVROLET COMPANY

[No. 28,615. Filed June 8, 1950.]

Emmert, C. J., concurs without opinion.

*J. Emmett McManamon*, Attorney General, and *John H. Fetterhoff*, Deputy Attorney General, for appellant.

*Barney & Hughes*, of Indianapolis, for appellee.

JASPER, J.—This action was instituted by appellee against appellant, asking that appellant be permanently enjoined from enforcing part of Section III of General Order No. 1, as adopted and promulgated by appellant, which section fixes the maximum amount of the dealer participation, the pertinent part of which reads as follows:

> "And in the event that the retail seller himself sells any such insurance to the retail buyer, or otherwise, directly or indirectly, receives or in any manner becomes entitled to receive a commission or brokerage on any insurance sold to the retail buyer and the cost of such insurance to the retail buyer is included or financed in the retail installment contract, then no dealer's participation shall be paid by the licensee to the retail seller, and the maximum dealer's participation, in such event, is now fixed by the Department at nil."

Said order became effective on February 13, 1947. Appellee's complaint was based on the theory that the

above portion of the order is arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, and short of statutory right. To this complaint a demurrer was filed, which was overruled, following which an answer of affirmation and denial was filed. The decision and judgment of the trial court perpetually enjoined appellant from enforcing the above portion and provision of Section III of General Order No. 1.

The assignment of errors questions the overruling of the demurrer to the complaint, the overruling of the motion for new trial, and the jurisdiction of the trial court over the subject matter and the person of the appellant.

Appellant contends that the trial court committed error by overruling the demurrer to appellee's complaint. The complaint was in one paragraph, and rhetorical paragraph four thereof is as follows:

"4. That in procuring such insurance from an insurance company in those instances in which plaintiff is authorized by the retail buyer to do so, plaintiff acts through its president who is a duly licensed insurance agent under the laws of the State of Indiana, and through Sterling Insurance Agency, Inc., an Indiana corporation affiliated with the plaintiff, and by virtue thereof plaintiff indirectly receives or becomes entitled to receive a commission or brokerage paid by the insurance company from which said insurance is procured; that plaintiff desires and intends to extend its corporate powers so as to qualify it to act as a licensed insurance agent in procuring insurance as aforesaid and thus to become entitled as a licensed agent directly to receive a commission or brokerage on such insurance as it procures from the insurance company."

The ground for demurrer was that the complaint did not state facts sufficient to constitute a cause of action.

The portion of the memorandum to the demurrer applicable herein is as follows:

"6. The theory of said complaint is based upon an illegal premise: . . .

"(b) Said complaint further admits (Rhetorical Paragraph 4) that it is not legally qualified under the statutes to act as an insurance agent or broker, yet the foundation of this action is predicated on the theory of commissions or brokerages, directly or indirectly, as an insurance agent or broker. This is also in violation of the statutes.

"7. The complaint shows that the plaintiff is not legally qualified to write insurance for its retail buyers, nor to act as agent for either its president or its affiliate.

"8. The complaint shows that plaintiff has and is being credited with 'Dealer Participation' with nothing to show that it has in any manner been retarded by defendant in collecting and receiving the same."

Appellee, Johnson Chevrolet Company, to qualify as an insurance agent, would have to make application under § 39-4503, Burns' 1940 Replacement, which provides as follows:

"Any individual, copartnership or corporation desiring, as an agent, as a solicitor, or as a broker, to engage in the insurance agency business, shall first apply to the department in the manner hereinafter prescribed, for an insurance agent's license, an insurance solicitor's license, or an insurance broker's license, as the case may be, authorizing such agent, solicitor or broker to engage in and transact such business. The applicant for such license shall file with the department, his, their or its written application for a license authorizing him, them or it to engage in the general insurance business, or any special line thereof which may lawfully be written in this state, as an agent, as a solicitor or as a broker, and the applicant shall make a sworn statement as to the qualifications hereafter prescribed, on uniform forms and

supplements prepared by the department. The applicant for an agent's license shall be vouched for by an official or a representative of the company in whose behalf the agent proposes to. act; the applicant for a solicitor's license shall be vouched for by the agent in behalf of whom the solicitor proposes to act; the applicant for a broker's license shall be vouched for in statements by at least two (2) licensed resident insurance agents; such vouchers shall set forth the following:

"(a) That the applicant is personally known to him;

"(b) That the applicant has had experience or instruction in the general or some mentioned special line of insurance, surety. or indemnity coverage;

"(c) That the applicant is of good business reputation and is worthy of a license;

"(d) That the applicant proposes to engage in the business of insurance;

"(e) That the applicant has or has not been, to the knowledge of such agent, refused or had revoked a license by the department of insurance of any state; and that if to the knowledge of such agents or either of. them, the applicant has been refused or had revoked a license by the department of insurance of any state, such facts and circumstances relating thereto, as are known, shall be set forth.

"Such vouchers shall be signed and sworn to by the person executing the same and shall be a part of the form of application prescribed by the department."

And further meet the requirements of §39-4504, Burns' 1940 Replacement.

A person or corporation not licensed as an insurance agent in the State of Indiana is subject to §39-5030, Burns' 1940 Replacement, which provides as follows:

"(a) No company acting through its officers or members, attorney-in-fact, or by any other party, no officer of a company acting on his own

behalf and no insurance agent, broker, or solicitor, personally or by any other party, shall offer, promise, allow, give, set off or pay, directly or indirectly, any rebate of or part of the premium payable on a policy, or any agent's commission thereon, or earnings, profits, dividends or other benefits founded, arising, accruing, or to accrue thereon or therefrom, or any special advantage in date of policy or age of issue, or any paid employment or contract for services of any kind, or any other valuable consideration or inducement, to or for insurance on any risk in this state, now or hereafter to be written, or for or upon any renewal of any such insurance, which is not specified in the policy contract of insurance, or offer, promise, give, option, sell or purchase any stocks, bonds, securities, or property, or any dividends or profits accruing or to accrue thereon, or other thing of value whatsoever as inducement to insurance or in connection therewith, or any renewal thereof, which is not specified in the policy. . . .

"(b) No insured person or party or applicant for insurance shall directly or indirectly, receive or accept, or agree to receive or accept, any rebate of premium or of any part thereof, or all or any part of any agent's or broker's commission thereon, or any favor or advantage, or share in any benefit to accrue under any policy of insurance, or any valuable consideration or inducement, other than such as are specified in the policy. . . ."

This court cannot say that appellee can or ever will be licensed by the Insurance Department of the State of Indiana. The granting of such license is in the sound discretion of the Department, and, until appellee is duly licensed as an insurance agent, it is not entitled to receive, directly or indirectly, insurance commission or brokerage. See Opinions of the Attorney General, 1937, p. 74.

This being an action invoking equity jurisdiction, appellee must come into court with clean hands. Ap-

pellee, having violated the laws of this state by the allegation contained in rhetorical paragraph four of its complaint, did not come into court with clean hands. It is further necessary, in asking for this injunction, that appellee be in an established insurance business, which in this case would be an insurance agency. The mere fact that it is willing to engage in such business, or intends to engage in such business, is not enough for injunctive relief. Until such time as appellee is duly licensed as an insurance agent, there can be no property right or interest shown to be jeopardized, and equity had no jurisdiction to enjoin appellant. *State ex rel. Fry* v. *Superior Court of Lake County* (1933), 205 Ind. 355, 370, 186 N. E. 310. The action is prematurely brought. The demurrer, including the pertinent portion of the memorandum above set out, properly raises the question as to the sufficiency of the facts to constitute a cause of action. The face of the complaint shows that there is a failure to state facts sufficient to constitute a cause of action, and the demurrer should have been sustained.

Appellee further contends that the portion of the regulation above set out is arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, and short of statutory right. We feel that this question should be answered. Section 58-925, Burns' 1943 Replacement, gives to appellant the authority to make rules and regulations necessary to carry out the Retail Instalment Sales Act. The delegation of authority to adopt rules and regulations can be conferred upon administrative boards. These rules and regulations have the force of statutory enactment. *Blue* v. *Beach* (1900), 155 Ind. 121, 56 N. E. 89; *Wallace* v. *Feehan* (1934), 206 Ind. 522, 190 N. E. 438.

The Retail Instalment Sales Act (§ 58-910, Burns' 1943 Replacement) provides as follows:

"No licensee shall enter into any agreement with any retail seller regarding the purchase of any retail instalment contract whereby the retail seller shall receive, directly or indirectly, any benefit from or part of any amount collected or received from any retail buyer, as a finance charge or as the cost of the insurance to the retail buyer, in excess of an amount fixed and determined by the department and no licensee shall directly or indirectly pay any part of the amount collected as a finance charge or retail buyer's cost of insurance to any retail seller on any retail instalment contract purchased from him in excess of the amount so fixed; and the department shall fix such maximum amount which may be so paid. . . ."

Appellant, pursuant to this statute, adopted as part of its General Order No. 1 the maximum amount of dealer's participation to be paid to the retail seller covering the four classes of sales contract, and then added the paragraph which has been questioned in appellee's complaint.

The Retail Instalment Sales Act has not been questioned by appellee. The question presented therefore is whether or not, by General Order No. 1, appellant had the authority to set at nil dealer's participation where a retail seller, either directly or indirectly, or in any other manner, became entitled to receive commission or brokerage on insurance sold to the retail buyer.

It is not contemplated by the Retail Instalment Sales Act to regulate the licensing of insurance agents, nor the amount of commission to be received by them, nor is it contemplated to keep insurance agents from receiving their commissions, and a retail seller of automobiles is not prohibited from receiving insurance commissions when licensed to do so,

nor is it within the act to keep people or corporations from engaging in both the insurance business and the retail automobile business, which may include dealer's participation, when set by the licensee within the maximum, under the regulation of appellant.[1] Appellant, by its regulation, attempts to keep the retail seller from entering into the insurance business if it wishes to receive dealer's participation. The cost of the retail buyer cannot be affected, because both the finance charges and the insurance rates are controlled, as is the licensing of each dealer, by their respective departments of the state. Whether or not dealer's participation is paid would not affect the cost to the retail buyer. The public therefore would not be affected one way or the other. The regulation would not affect the general welfare, and is an arbitrary invasion of private property and personal rights under the guise of police power.[2] The section of the regulation in question here is without statutory authorization.

It is unnecessary to discuss appellant's other alleged grounds for reversal.

Judgment reversed, with instructions to sustain appellant's demurrer.

Emmert, C. J., concurs in result.

NOTE.—Reported in 92 N. E. 2d 714.

1 See Opinions of the Attorney General, 1946, p. 28.

2 See Minnesota Law Review, Vol. 34, No. 2, pp. 91, 109, January, 1950, The Persistence of Substantive Due Process in the States, by Monrad G. Paulsen.