DEPARTMENT OF INSURANCE ET AL. *v.* MOTORS
INSURANCE CORPORATION ET AL., STATE OF
INDIANA ON RELATION OF DEPARTMENT OF
INSURANCE ETC. *v.* MARION SUPERIOR COURT,
BARGER, SPECIAL JUDGE.

[Nos. 29,375 and 29,383. Filed November 13, 1956.]

*Edwin K. Steers,* Attorney General, *James C. Jay,* special counsel, of Indianapolis, for appellants and relators.

*Hubert Hickam* and *Alan W. Boyd,* of Indianapolis, for appellee, Motors Insurance Corporation.

*Robert Hollowell,* of Indianapolis, for appellees other than Motors Insurance Corporation.

*Hubert Hickam, Alan W. Boyd* and *Robert Hollowell,* of Indianapolis, for respondents.

*Barnes, Hickam, Pantzer & Boyd* and *Hollowell & Hamill,* of Indianapolis, of counsel.

BOBBITT, J.—These cases were consolidated for argument and will be so treated in this opinion. They arise out of an action by appellee, Motors Insurance Corporation, hereinafter referred to as the "Company," to enjoin the appellants from refusing to license applicants proposing to act as agents for the Company in the sale of automobile insurance on the sole ground that they were automobile dealers or persons engaged in the automobile business.

Appellees, Frank E. Shaver, Howard L. Hauser, John W. Moore, and Adams Pontiac, Inc. were, upon proper petition, permitted to intervene and file their complaint alleging in substance the matters set forth in the complaint of appellee Company; and, further, that they were applicants for automobile insurance agents' licenses; that they had each passed the required examination and had met all requirements of the insurance laws of the State of Indiana; and that they were among those persons for whom licenses were requested by the Company and were refused solely because they are automobile dealers.

Thereafter relators-appellants filed their motion to dismiss on the grounds that (1) the court does not have jurisdiction of the subject-matter of the action; (2) the court does not have jurisdiction of the parties; and (3) the court does not have jurisdiction of this particular case.

The motion to dismiss was overruled and a temporary injunction issued enjoining relators-appellants "from refusing to issue licenses to applicants proposing

to act on behalf of the plaintiff on the ground that such applicants are automobile dealers or persons engaged in or connected with the automobile business and expect to continue such business in conjunction with the insurance business and from discriminating against such applicants in the issuance of such licenses on said grounds."

Subsequently relators-appellants then filed in this court a petition for writ of mandate seeking to compel respondents, the Marion Circuit Court, and the Honorable Harold S. Barger as Special Judge thereof, to expunge from the records of such court the order on temporary injunction and to prohibit such respondents from proceeding further in said cause. We issued a temporary writ.

The question of the jurisdiction of the Marion Circuit Court is common both to the appeal and the original action. The appeal involves the additional question of whether such jurisdiction, if present, was properly exercised in granting the temporary injunction.

*First,* we shall consider the common question of the jurisdiction of the Marion Circuit Court.

The pertinent facts are: Motors Insurance Corporation is engaged in the business of insuring against risks of automobile damage and theft. Its uniform method of operation in the various States is to appoint as agents automobile dealers and persons engaged in the automobile business. The Company is authorized to transact business in Indiana and desires to pursue its customary method of operation in this State.

Before this action was commenced the Company had sponsored license applications for a substantial number of automobile dealers and had established and conducted classes and schools in which such dealers were taught and trained in respect to the knowledge of the insurance laws of the State of Indiana, the general obligations and duties of an insurance agent, and the

general principles of insurance contracts and business
policies pursued by the Company. In the operation of
such schools and the conducting of agency training pro-
grams, the Company has expended substantial sums of
money. A number of such applicants had taken and
passed the written examination prescribed by law and
had been notified by the proper authorities that they
had successfully qualified for licenses to write auto-
mobile insurance. Some of the applicants sponsored by
the Company already held licenses as agents for other
companies writing the same type of insurance and were
not, therefore, required to take such examination.
Others had made application but had not taken the
examination at the time this action was commenced,
and others who had been interviewed by representa-
tives of the Company were preparing to make applica-
tion to take such examination.

Before any licenses were issued or refusals made to
any of such persons who had successfully taken the ex-
amination, the Insurance Commissioner delivered to
the Company a letter which, omitting formal parts, is
as follows:

"Confirming our conversation of last Friday
September 30, please be advised that I, under the
provisions as granted in Burns 39-4504, do hereby
refuse to license Automobile Dealer Agencies as
agents and solicitors of insurance for the follow-
ing reasons, to wit:
"1.    Automobile dealers are not primarily en-
gaged in insurance business but that of selling
automobiles and therefore would not be able to
devote sufficient time to the business of insurance
to give the type of service to which the policy-
holder is entitled.
"2.    An example in point is illustrated in
Time Magazine dated October 3, 1955, wherein
improper classification of risks by the Service
Fire Company in Texas which amounted to
$182,000.00 overcharge. This illustrates the point

that a company dominated by a finance company such as the Service Fire Company which is owned by C.I.T. is more interested in the finance business than it is in rendering service to the customer.

"3. Coercion practices would result at the time when the automobile was purchased in that the policyholder would be loaded with a full package of coverage without even asking the purchaser.

"4. Purchasing insurance like the purchasing of automobiles should be selective by the individual and not coercive. Such selectivity would encourage competition and be to the best interest of the insuring public.

"5. Monopolization would tend to increase.

"6. Insurance is a specialized business and should not be handled by part time personnel.

"7. Automobile salesmen would not be able to devote sufficient time in keeping themselves informed as to the present trends in the insurance business.

"8. Trouble has arisen in the past when automobile dealers and finance companies were licensed to do insurance business in that they do not always inform the purchaser that he has only physical damage coverage.

"9. Licensing of automobile dealers will tend to break down the American agency system which is competitive, personal, and subject to public opinion.

"10. The solicitor, agent, would be more interested in selling his product rather than correct coverage insurance which would be a dis-service to the insuring public.

"11. Hidden rebating would exist by the profits from the insurance business resulting in lower prices on the automobile.

"12. Because of the constant turnover of salesman personnel in the automobile business I feel as though such turnover would result in constant inexperienced solicitors and agents in the field of insurance.

"For the above reasons therefore, I am exercising my discretion and denying licenses to automobile dealer applicants. Hoping that I have made my position clear."

No individual applicant was personally notified of any adverse action on his application for license.

The above letter was treated by the Commissioner as a regulation and was so accepted by appellees. It was so treated in the trial court, and will be so considered here.

Jurisdiction is the right, authority and power to hear and determine a cause of action. *State ex rel. Pub. Serv. Com.* v. *Marion C. Ct.* (1951), 230 Ind. 277, 284, 100 N. E. 2d 888.

(a) Relators-appellants have, by their general appearance at the hearing on the petition for temporary injunction waived any question as to the jurisdiction of the parties. *Slinkard* v. *Hunter* (1936), 209 Ind. 475, 480, 199 N. E. 560; *Chandler et al.* v. *The Citizens National Bank of Evansville* (1898), 149 Ind. 601, 49 N. E. 579; *Berry-Enright Lumber Co.* v. *Gardner* (1937), 104 Ind. App. 9, 7 N. E. 2d 523; *Harvey* v. *Rodger* (1926), 84 Ind. App. 409, 143 N. E. 8.

(b) The Marion Circuit Court has original jurisdiction in all cases at law and in equity except as otherwise provided by statute, and is expressly authorized to issue injunctions. *State ex rel. Pub. Serv. Com.* v. *Marion C. Ct., supra,* (1951), 230 Ind. 277, 285, 100 N. E. 2d 888.

(c) Having determined that the trial court had jurisdiction of the parties and the subject-matter of the action, there then remains only the question of jurisdiction of the particular case.

Relators-appellants assert that there was no jurisdiction of this particular case because appellees and the

applicants for the licenses here involved had an adequate statutory remedy provided by the Acts of 1935, ch. 162, §214, p. 588, being §39-4506, Burns' 1952 Replacement, which is as follows:

> "Within thirty [30] days after a revocation, suspension or refusal to license, the individual, copartnership or corporation aggrieved shall have the right to petition the superior court of Marion County, to require said commissioner to show cause why the license should not be reinstated or issued. Before such petition be made, the individual, copartnership or corporation charged shall file with the department a satisfactory cost bond and after the filing of such bond and pending the hearing on such petition, the individual, copartnership or corporation charged may pursue his, their or its business of insurance."

As we see the issues in this case, it is not an action by an individual, copartnership or corporation which is aggrieved because of the refusal of the Commissioner to issue a license. None of the applicants for licenses here involved are parties to this action, nor is appellee, Motors Insurance Corporation, an applicant for a license to write automobile insurance. The relief here sought does not seek to compel the issuance of a license to any individual applicant, but rather it seeks to prevent the enforcement of a regulation refusing to consider applicants for licenses because they are members of a certain class, viz., automobile dealer agencies.

It is not denied that each applicant for license, upon the refusal of the Commissioner to grant, could have availed himself of the remedy provided by statute.

The Company is not seeking to compel the issuance of a license to itself, but rather to protect a lawful business from an alleged arbitrary, unreasonable and unlawful interference therewith by appellant, Insurance Commissioner.

It seems clear to us that the statute which provides a remedy for an individual applicant who is refused a

license to write automobile insurance, affords no remedy to the company herein for the protection of its established method of doing business in a situation such as is presented by the facts as shown by the record in this case.

Appellee, Motors Insurance Corporation, has no remedy to secure and protect its rights other than that which it has pursued. There is a maxim that: "Equity will not suffer a wrong to be without a remedy." *Dodd* v. *Reese* (1940), 216 Ind. 449, 462, 24 N. E. 2d 995, 128 A.L.R. 574.

The State of Indiana by authorizing the Company to do business in this State gave to it the right to hire and contract with persons to act as its agents for the sale of insurance. The creation of such right included an appropriate remedy for its enforcement. *Mathewson* v. *Mathewson* (1906), 79 Conn. 23, 63 Atl. 285, 286, 5 L. R. A. (N. S.) 611.

The rights which the Company is here endeavoring to protect are, under the circumstances in this case, clearly the basis for equitable relief and the Marion Circuit Court had jurisdiction of this particular case, and it did not err in overruling appellants' separate motions to dismiss. *Department of Insurance* v. *Schoonover* (1947), 225 Ind. 187, 192, 72 N. E. 2d 747.

*Second:* We now proceed to consider the question raised only in the appeal. Did the trial court err in granting a temporary injunction?

We recognize the general rule that the power of courts of equity to issue restraining orders and injunctions is limited to the protection of civil and property rights. *State ex rel. Givens, etc.* v. *Marion S. Ct., Rm. 1,* (1954), 233 Ind. 235, 238, 117 N. E. 2d 553.

This court has also held that a court of equity has jurisdiction to enjoin public officials who are proceeding illegally and improperly under a claim of right, or where the exercise of such jurisdiction is necessary to prevent a multiplicity of suits, or irreparable injury to property. *Sweigart* v. *State* (1938), 213 Ind. 157, 163, 12 N. E. 2d 134, 114 A. L. R. 1117; *Grossman* v. *City of Indianapolis* (1909), 173 Ind. 157, 162, 88 N. E. 945; *Coleman* v. *City of Gary* (1942), 220 Ind. 446, 454, 44 N. E. 2d 101.

This court in *Dept. of Financial Inst.* v. *General Finance Corp.* (1949), 227 Ind. 373, 384, 86 N. E. 2d 444, 10 A. L. R. 2d 436, quoting from *Buchanan* v. *Warley* (1917), 245 U. S. 60, 74, 62 L. Ed. 149, 161, 38 S. Ct. 16, said:

> " 'Property is more than the mere thing which a person owns. It is elementary that it includes the right to acquire, use, and dispose of it. The Constitution protects these essential attributes of property. *Holden* v. *Hardy,* 169 U. S. 366, 391, 42 L. Ed. 780, 790, 18 S. Ct. 383. Property consists of the free use, enjoyment, and disposal of a person's acquisitions without control or diminution save by the law of the land.' "

"Property" in its legal sense means a valuable right or interest in something rather than the thing itself, and is the right to possess, use and dispose of that something in such a manner as is not inconsistent with law. *Dept. of Financial Institutions* v. *Holt, etc.* (1952), 231 Ind. 293, 303, 108 N. E. 2d 629, 634; *Meek* v. *State* (1933), 205 Ind. 102, 105, 185 N. E. 899.

The *Department of Insurance* v. *Schoonover, supra,* (1947), 225 Ind. 187, 72 N. E. 2d 747, was an action to enjoin the enforcement of a statute which restricted the selling of fire and casualty insurance in Indiana to agents selling "on a commission basis only." One of the

plaintiffs was a company which employed agents on a salary basis. At page 189 of 225 Ind. it is said:

"The facts set out in the consolidated complaints are sufficient to show that each plaintiff is directly and peculiarly affected by the statute. . . ."

The undisputed evidence in the case at bar not only shows that the Company is "directly and peculiarly" affected by the regulation, but has a definite property right not only in the investment which it has made in the training of agents, but also in its manner of doing business.

The Insurance Commissioner derives his power and authority solely from the statute,[1] and unless a grant of power can be found in the statute he can exercise none. *Davis* v. *Pelley* (1952), 230 Ind. 248, 252, 102 N. E. 2d 910; *State ex rel. Young* v. *Niblack* (1951), 229 Ind. 596, 602, 603, 99 N. E. 2d 839; *Chicago & E. I. R. Co.* v. *Public Service Comm.* (1943), 221 Ind. 592, 594, 49 N. E. 2d 341.

Appellants assert that the granting or refusal to grant a license such as that sought by the applicants of the Company is within the sound discretion of the Commissioner under authority granted by Acts 1935, ch. 162, §14, p. 588, being §39-3311, Burns' 1952 Replacement, which provides, in part, as follows:

"Rules and regulations.—The department is hereby authorized to make, promulgate, alter, amend or repeal rules and regulations for any or all of the following enumerated purposes:

. . .

"(c) Defining what is a safe or an unsafe manner and a safe or unsafe condition for conducting and transacting business by any insurance company to which this act is applicable.

1. Acts 1935, ch. 162, §14, p. 588, being §39-3311, Burns' 1952 Replacement.

"(d)  For the establishment of safe and sound methods for the transaction of business by such insurance companies and for the purpose of safeguarding the interests of policyholders, creditors and shareholders respecting the withdrawal or payment of funds by any life insurance company in times of emergency."

We concur with appellants that in the absence of some special statutory authority, injunction will not lie to control or review the exercise of the discretion of the Commissioner in the issuance of licenses unless it clearly appears that he has abused such discretion. *State ex rel.* v. *Curtin* (1940), 217 Ind. 190, 194, 26 N. E. 2d 909; *Phillips et al.* v. *Officials of Valparaiso, etc. et al.* (1954), 233 Ind. 414, 420, 120 N. E. 2d 398.

Appellants also rely upon the statement in *Dept. of Financial Inst.,* v. *Johnson Chev. Co.* (1950), 228 Ind. 397, 403, 92 N. E. 2d 714, where it is said:

"The granting of such license is in the sound discretion of the Department, and, until appellee is duly licensed as an insurance agent, it is not entitled to receive, directly or indirectly, insurance commission or brokerage."

Sound judicial discretion is not an unlimited power. It does not include arbitrary or wilful action. *Sanders* v. *Ryan* (1942), 112 Ind. App. 470, 478, 41 N. E. 2d 833; *Langnes* v. *Green* (1931), 282 U. S. 531, 541, 75 L. Ed. 520, 51 S. Ct. 243; *Avery* v. *Calumet & Jerome Copper Co.* (1930), 36 Ariz. 239, 284 Pac. 159, 163; *Appeal of Hilt, Hilt* v. *Ward* (1929), 128 Me. 191, 146 Atl. 439, 441. See also: 1 C. J. S., Abuse, pp. 402-403.

In *Dept. of Financial Inst.* v. *Johnson Chev. Co., supra,* (1950), 228 Ind. 397, 92 N. E. 2d 714, the Department of Financial Institutions, by regulation, attempted to keep the retail seller from also engaging in the insurance business if it desired

to receive dealer's participation. At page 406 of 228 Ind. this court said:

". . . nor is it within the act to keep people or corporations from engaging in both the insurance business and the retail automobile business, . . ."

We believe this statement applies with equal force to the situation in the case at bar.

In *Hauser* v. *North British & Mercantile Ins. Co.* (1912), 206 N. Y. 455, 100 N. E. 52, 42 L. R. A. (N. S.) 1139, Ann. Cas. 1914B, 263, the superintendent of insurance refused to issue a certificate as an insurance broker to a lawyer under a statute which provided that insurance agents or brokers must be engaged *principally* in the insurance business. The Court of Appeals of New York, at page 53 of 100 N. E., said:

"But the Legislature has prescribed in this statute a condition for the issuance of the license, which is a purely arbitrary restriction. There is no good reason, and no public interest can, conceivably, be subserved, in prohibiting persons from conducting the business of an insurance agent, or broker, in connection with any other lawful business, or occupation, in which they may be engaged." See also: *Goodpaster* v. *Southern Ins. Agency* (1943), 293 Ky. 420, 169 S. W. 2d 1, 3.

We do not believe that the purposes for which regulations may be promulgated under the provisions of subsections (c) and (d) of §39-3311, *supra,* include the arbitrary exclusion of a class of persons because they already may be engaged in another lawful occupation or business.

While the Legislature, under the police power, may enact legislation to regulate corporate abuses, including abuses in the insurance business, it may do so only in the protection of the public health, morals, safety or welfare; *Kirtley* v. *State* (1949), 227 Ind. 175, 181, 84 N. E. 2d 712; it may not

authorize a public official to give or withhold arbitrarily or capriciously, permission to pursue a lawful occupation or business. *Stern* v. *Metropolitan Life Ins. Co.* (1915), 90 Misc. Rep. 129, 154 N. Y. Supp. 283, 285, 286.

The insurance business is a lawful and commendable occupation which any citizen of good character may, under our Constitution, freely and lawfully pursue upon compliance with reasonable regulations which the Legislature, under the police power, may prescribe. *Department of Insurance* v. *Schoonover, supra,* (1947), 225 Ind. 187, 72 N. E. 2d 747; *Hauser* v. *North British & Mercantile Ins. Co., supra,* (1912), 206 N. Y. 455, 100 N. E. 52, 42 L. R. A. (N. S.) 1139, Ann. Cas. 1914B, 263; *Stern* v. *Metropolitan Life Ins. Co., supra; Northwestern Nat. Ins. Co.* v. *Fishback* (1924), 130 Wash. 490, 228 Pac. 516, 36 A. L. R. 1507.

The right of every individual under the Indiana Constitution to engage in any lawful business cannot be prohibited unless such prohibition is grounded upon some condition existing in the business which adversely affects the public health, morals, safety or welfare.

The right to pursue any proper vocation is an inalienable right, and a privilege not to be restricted except for good cause. *Weisenberger* v. *State* (1931), 202 Ind. 424, 428, 175 N. E. 238; *State Board of Barber Examiners* v. *Cloud* (1942), 220 Ind. 552, 572, 573, 44 N. E. 2d 972.

We do not believe the fact that an applicant for an insurance agent's license is an automobile dealer is a "good cause" for denying him the right to engage in the business of writing automobile insurance.

The general public is not concerned with whether or not the agent who sells an automobile insurance policy is also an automobile dealer, or is at the same time engaged in any other lawful occupation or business, or whether he makes the selling of automobile insurance his sole occupation.

While the Legislature may delegate to the Department of Insurance power and authority to adopt rules and regulations reasonably adapted to carry out the purpose for which it was created; *Blue* v. *Beach* (1900), 155 Ind. 121, 133, 56 N. E. 89, 50 L. R. A. 64; yet such rules and regulations are bounded by the constitutional limitations of the police power.

The rights of the intervenors herein have not been discussed because no intervention could change the character of the original action nor deprive the court of any jurisdiction which it would have had in the absence of any intervention. Intervenors herein took the case as they found it. *Abeele* v. *Ruse* (1943), 112 Ind. App. 596, 602, 44 N. E. 2d 235.

For the reasons above stated the Insurance Commissioner was not only without the statutory authority to issue the regulation excluding all automobile agencies from securing licenses as automobile insurance agents, but such regulation is also unlawful as being in violation of Article 1, Section 1 of the Constitution of Indiana.

The trial court did not err in granting the temporary injunction.

The temporary writ heretofore issued in the original action, No. 29,375 is dissolved; and the judgment of the trial court in the appeal No. 29,383 is affirmed.

Landis, C. J., Achor and Arterburn, JJ., concur. Emmert, J., not participating.

NOTE.—Reported in 138 N. E. 2d 157.