WILLIAM HAUSER, Respondent, *v.* NORTH BRITISH AND MERCANTILE INSURANCE COMPANY, Appellant.

Constitutional law — rule for testing constitutionality of a statute affecting the occupation of a citizen — unconstitutionality of section 142 of Insurance Law confining the business of procuring insurance, as brokers or agents, to a designated class.

1. The constitutionality of an act affecting the business of a citizen is to be tested by its effect upon his right freely to pursue a lawful occupation. A statute under the guise of an exercise of the

police power cannot arbitrarily interfere with that liberty of pursuit; the equal protection of the laws means equality of opportunity to all in like circumstances, and classification to be valid must not be arbitrary and discriminate against persons without a basis in reason.

2. Section 142 of the Insurance Law, first inserted in 1911 by chapter 748 of the laws of that year, as amended by chapter 1 of the Laws of 1912, the purpose of which is to confine the business of broker in procuring insurance to those who should make that their principal business, or who should be real estate agents, or brokers, is unconstitutional.

*Hauser* v. *N. B. & M. Ins. Co.*, 152 App. Div. 91, affirmed.

(Submitted October 25, 1912; decided November 19, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 26, 1912, in favor of plaintiff upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*W. H. Van Benschoten* for appellant. The obtaining of a certificate from the superintendent of insurance was a condition precedent to any recovery by the plaintiff. (L. 1912, ch. 1; *Johnston* v. *Dahlgren*, 166 N. Y. 354; *Wood & Selick* v. *Ball*, 190 N. Y. 217.) The legislature may properly enact statutes which provide for the reasonable and proper regulation of the business of insurance, and in that connection may require a person to have a license from the state superintendent of insurance in order to lawfully engage in the insurance brokerage business, provided the conditions upon which said license is granted are not unreasonable. (*Gray* v. *Connecticut*, 159 U. S. 74; *People ex rel. Schwab* v. *Grant*, 126 N. Y. 473; *City of New York* v. *Vandewater*, 113 App. Div. 456; *Mann* v. *Illinois*, 94 U. S. 113; *People* v. *Warden*, 144 N. Y. 529; 183 N. Y. 223; *People* v. *Formosa*, 131 N. Y. 478.) The real question before the court is whether the statute in question is a valid exercise of the police

power. (*Manigault* v. *Springs*, 199 U. S. 473; *B. E. S. R. R. Co.* v. *B. S. R. R. Co.*, 111 N. Y. 132; *Fisher Co.* v. *Woods*, 187 N. Y. 90; *People ex rel. Armstrong* v. *Warden*, 183 N. Y. 223; *People ex rel. Schwab* v. *Grant*, 126 N. Y. 473; *People* v. *Ringe*, 197 N. Y. 143; *Wright* v. *Hart*, 182 N. Y. 341; *Ives* v. *So. Buffalo Ry. Co.*, 201 N. Y. 271; *People v. Jenkins*, 202 N. Y. 59.)

*Alfred J. Talley* for superintendent of insurance of the state of New York.

*Almet Reed Latson* and *Ward W. Pickard* for Insurance Brokers' Asssociation of New York. So much of the statute as requires a person to have a license from the state superintendent of insurance in order to lawfully engage in the insurance brokerage business is valid as an exercise of the police power of the state. (*Fisher Co.* v. *Woods*, 187 N.Y. 90; 1 Tiedeman on State & Federal Control, 264; *People* v. *Formosa*, 131 N. Y. 478; *Emert* v. *Missouri*, 156 U. S. 296; *People* v. *Russell*, 49 Mich. 617; *People ex rel. Moskowitz* v. *Jenkins*, 202 N. Y. 53.) If subdivision "d" of the statute is unconstitutional, it may be separated from the remainder of the statute without destroying its effectiveness. (*Duryee* v. *Mayor*, 96 N. Y. 477; *Lawton* v. *Steele*, 119 N. Y. 226, 241; *Matter of N. Y. & L. I. Bridge Co.*, 148 N. Y. 540; Cooley on Cons. Lim. *178; *Emert* v. *Missouri*, 156 U. S. 296; *People* v. *Russell*, 49 Mich. 617; *People* v. *Wurster*, 14 App. Div. 556; *Buffalo* v. *Hill*, 79 App. Div. 402; *People* v. *Health Department*, 117 App. Div. 856; 189 N. Y. 187; *People* v. *Grant*, 126 N. Y. 473; *People* v. *Thacher*, 42 Hun, 349.)

*William B. Ellison* as *amicus curiæ.*

*William Hauser*, respondent, in person. The section of the statute under consideration is arbitrary and discriminatory in its character, since it does not affect all persons alike, and is, therefore, repugnant to the Federal

and State Constitutions. (*Gulf C. & S. Co.* v. *Ellis*, 165 U. S. 150; *Cotting* v. *Kansas C. S. Co.*, 183 U. S. 79; *Connolly* v. *Union S. P. Co.*, 184 U. S. 540; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *Matter of Pell*, 171 N. Y. 48; *People* v. *O. C. R. C. Co.*, 175 N. Y. 84; *Wright* v. *Hart*, 182 N. Y. 330; *People ex rel. McPike* v. *Van De Carr*, 91 App. Div. 20; *People* v. *Beattie*, 96 App. Div. 383; *People ex rel. Appel* v. *Zimmerman*, 102 App. Div. 103; *People ex rel. Wineburgh Adv. Co.* v. *Murphy*, 195 N. Y. 126; *People ex rel. Duryea* v. *Wilber*, 198 N. Y. 1.) The enforcement of the statute cannot be justified as a proper exercise of the police power of the state. (*Schnaier* v. *Hotel Navarre*, 182 N. Y. 83; *Wright* v. *Hart*, 182 N. Y. 330; *People ex rel. Armstrong* v. *Warden, etc.*, 183 N. Y. 223; *Fisher Co.* v. *Woods*, 187 N. Y. 90; *People* v. *Ringe*, 197 N. Y. 143; *People ex rel. Duryea* v. *Wilber*, 199 N. Y. 1; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271; *People ex rel. Wineburgh Adv. Co.* v. *Murphy*, 129 App. Div. 260; 195 N. Y. 126; *Boswell* v. *Sec. Ins. Co.*, 193 N. Y. 465; *Stewart* v. *Palmer*, 74 N. Y. 183.)

GRAY, J. From the facts, which were agreed upon by the parties, in the submission of their controversy, it appears that the plaintiff was a lawyer and, in connection with the practice of the law, had, for some years, carried on the business of an insurance broker. He held what is termed a "first class broker's certificate," which had been issued to him by the New York Fire Insurance Exchange; an organization formed by certain fire insurance underwriters. This certificate entitled him to receive commissions, or brokerage, as a fire insurance broker, to be paid by the members of the exchange, of which the defendant was one, upon his placing insurance with them. Upon the application of the plaintiff, the defendant issued, in the months of February and March, 1912,

two policies of fire insurance, covering, the one, certain personal property and, the other, certain real property, and delivered them to him for the owners.   The amounts of the premiums, or charges, due upon these policies were tendered by the plaintiff to, and were accepted · by, the defendant and were· duly indorsed upon the policies.   At the time of making the payments of the premiums, the plaintiff demanded of the defendant "the usual broker's commissions   *   *   *   upon the premium paid   *   *   * agreed upon and fixed by the members of the New York Fire Insurance Exchange."   Payment, however, was refused by the defendant, "for the reason that the plaintiff had not, prior to the application for, and the issuance of, the said policies and the payment of the premiums of insurance, or charges, thereon, obtained a broker's certificate of authority, as provided in section 142 of the Insurance Law, and by reason of the provision contained in said section 142 for a forfeit to the People of the State of the sum of $500 for a violation of any of the provisions of the section."

Section 142 of the Insurance Law, first inserted in 1911 by chapter 748 of the laws of the year, as amended by chapter 1 of the Laws of 1912, went into effect, by its terms, prior to the time of the transactions between the plaintiff and the defendant.   The section, so far as now material, provided that "No person, partnership, association or corporation shall act as broker in the solicitation or procurement of applications for insurance or receive for services in obtaining or placing such insurance any commission or other compensation from any underwriter authorized or permitted to do an insurance business in this state, or agent thereof, without first procuring a certificate of authority so to act from the superintendent of insurance, which must be renewed annually on the first day of January, or within six months thereafter."   Provision was made for the payment of a fee of $10 annually to the superintendent of insurance and for authority to

him to revoke a certificate in cases of violation of the statute. The section then reads: "Before any broker's certificate of authority shall be issued by the superintendent of insurance there must be filed in his office a written application for such certificate which must set forth, * * * (d) That the applicant is engaged or intends to engage, in good faith, principally in the insurance business or that he conducts or intends to conduct such business in connection with a real estate agency or real estate brokerage business," etc. Subdivisions a, b and c need not be quoted. They require a description of the applicant, whether an individual, a partnership, or a corporation, a statement whether any certificate as agent, or broker, had been theretofore issued and a statement of the business in which the applicant had been engaged. The section requires the application to be verified; defines the insurance contracts to which it is applicable and provides that for a violation of its provisions there should be a forfeiture to the people of the state of $500. After the act had gone into effect, the plaintiff made his application to the superintendent of insurance for a "broker's certificate of authority," which was refused upon the ground that "said application does not set forth that you are engaged, or intend to engage, in good faith, principally in the insurance business, or that you conduct, or intend to conduct, such a business in connection with a real estate agency, or real estate brokerage business." He had stated in his application, in answer to questions embodying these requirements of the statute, that he was engaged "in the practice of the law and as an insurance broker in connection therewith," and he refused to pledge himself otherwise as to the conduct of his future business.

The case of the plaintiff seems quite clear. Within the existing agreement and in accordance with the rules of the Fire Insurance Exchange, he had entitled himself, by the performance of services as a fire insurance broker, to receive from the defendant the usual brokerage com-

missions, agreed to be paid in such cases. Their pay-
ment was refused, solely, because he held no certificate
of authority from the superintendent of insurance, as
required by section 142 of the Insurance Law. That
official was prohibited by the statute from issuing such a
certificate, unless the application contained the statement
above quoted from clause d of the section, and he based
his refusal of the application, solely, upon that ground.
If the enactment of section 142 was a valid piece of legis-
lation, the plaintiff was remediless without a certificate.
If, however, the legislative act overstepped the limits,
within which the legislature may regulate and restrict
the business pursuits of the citizen, then it was violative
of the plaintiff's constitutional rights and was inoperative
to deprive him of the right to his brokerage.

The Appellate Division, in the first department, has
held the statute to be unconstitutional legislation and I
think that we should affirm its determination.

It is evident, from a reading of the provisions of this
added section of the Insurance Law, that it was the pur-
pose of the legislature to confine the business of the
insurance agent, or broker, mentioned to those who
should make that their principal business, or who should
be real estate agents, or brokers. That was made a con-
dition of the right to pursue the business. We may
readily concede that, as a measure regulative of a busi-
ness pursuit, which, from the extent to which it is car-
ried on, is, presumably, affected with a public interest,
the requirement by the legislature of a license would not
be an unreasonable exercise of power. That would afford
an opportunity for inquiry into antecedents and fitness of
character, and be a reasonable enough precaution in the
public interest. But the legislature has prescribed in this
statute a condition for the issuance of the license, which
is a purely arbitrary restriction. There is no good reason,
and no public interest can, conceivably, be subserved, in
prohibiting persons from conducting the business of an

462 Hauser v. North British & Mer. Ins. Co.

[206 N. Y.] Opinion, per Gray, J. [Nov.,

insurance agent, or broker, in connection with any other lawful business, or occupation, in which they may be engaged. As it was intimated below, following the suggestion in *People* v. *Ringe*, (197 N. Y. 143), the legislation, now in question, must have been promoted in the interests of those engaged in the insurance brokerage business, alone, or in connection with a real estate brokerage business, rather than with any view of the public welfare. (And see *People* v. *Gillson*, 109 N. Y. 389 at p. 399.) Why should those who wish to engage in the business of soliciting and placing insurance not be permitted to conduct it as incidental to, or in connection with, any other innocent occupation, except that of real estate brokers? Where the legislature may prohibit a business, or an occupation, it may prescribe conditions upon which it may be conducted; but, if the business, or occupation, be useful to the citizen, and it be lawful, the Constitution, whether of the state or of the nation, guarantees to him the right to pursue it freely and any arbitrary restriction upon its pursuit should be condemned as an invasion of the guaranty. In varying language, but with the same thought, in very many cases, this court has pointed out that the constitutionality of an act is to be tested by its effect upon the citizen's right freely to pursue lawful occupations; that a statute under the guise of an exercise of the police power cannot arbitrarily interfere with that liberty of pursuit; that the equal protection of the laws means equality of opportunity to all in like circumstances and that classification to be valid must not be arbitrary and discriminate against persons without a basis in reason. These principles have become familiar from frequent statement in the decisions and need no citation, nor discussion, of the cases here. They have become constituent elements in our popular form of government. The very nature of our free government forbids that a man should be compelled to refrain from acts which the laws permit.

The statute before us goes far beyond what is proper regulation and is prohibitory, in preventing a person from pursuing the occupation of an insurance broker, except as his principal business, or as an adjunct to a real estate business. To use the language in the case of *Wynehamer* v. *People*, (13 N. Y. at p. 399), this statute "passes the utmost limit of regulation, and does not even wear a disguise." The restriction is not in the public interests; it is, obviously, in the interests of the class, either, of insurance, or of real estate, brokers. The insurance underwriters are not forbidden to transact their business through brokers; they are required to limit it to the class of brokers authorized by the statute. The plaintiff is a lawyer and, presumably, the nature of that occupation should well qualify him to make insurance contracts and there are many mercantile occupations, which, certainly, cannot be deemed to affect the person's fitness to solicit, or to place, insurance. But this statute would prevent them from adding to their earnings by pursuing that occupation. To concede the validity of this statute would be to concede a power to the legislature in the guise of a regulation to destroy a lawful business. This plaintiff had built up a brokerage business, in connection with his other occupation — as may, presumably, others have done holding, similarly, fire exchange brokers' certificates —; but, under this statute, he is compelled to refrain from it, unless pursued under conditions which involve the sacrifice of that other occupation. Arbitrarily, the statute interferes with a citizen's business pursuits and, by an unreasonable discrimination, deprives him of that equal opportunity, which the Constitution guarantees to him. What is there in the calling of an insurance agent, or broker, which demands any especial training, or knowledge, not readily to be acquired by any business man? That he should be qualified by antecedents and in character for engaging in an occupation calling for some degree of trustworthiness may be true; as it is, also, true that

the nature of this occupation, differing from other mercantile pursuits, calls for an acquaintance with certain rules by which it is governed. But trustworthiness is the common property of men and success in placing insurance will depend upon the industry, honesty and competency, which the broker displays.

The statute invests the superintendent with no discretion and he has not pretended to exercise any. He gave his reason for refusing a certificate in an inability of the department to grant it, for the failure of the plaintiff to subscribe to the condition prescribed by the statute. That was of the essence of the legislation; read the section how you will. The legislature was dealing with "Agents' and Brokers' Certificates of Authority." It commences by defining the terms of "agent and broker." It, then, requires an agent of an insurance underwriter to procure a certificate of authority from the superintendent of insurance, annually, and forbids the employment of an agent unless possessing such a certificate. It continues by forbidding an underwriter to pay commissions, or compensation, to such agent, unless holding such a certificate of authority, and, in the clause heretofore quoted, forbids any person from acting as a broker without that certificate. Then follows the provision, which has, also, been quoted from, that, before any broker's certificate of authority shall be issued by the superintendent of insurance, a written application must be filed, in which the applicant sets forth that he is, or intends to be, engaged principally in the insurance business, or that he will conduct it in connection with a real estate business. Thus, the sole purpose was to deal with the occupation of an insurance agent, or broker, and to restrict it to a certain class of persons. If there was the purpose, as suggested, of preventing a person from obtaining a certificate with the object of indirectly securing a rebate on the insurance of his own property, in the guise of commissions, the suggestion is too far fetched to save

the act, as the Appellate Division said. Such a purpose could be appropriately accomplished by the "more direct and simple method" of prohibiting a broker from receiving commissions on the insurance of his own property, or that of any partnership, association, or corporation, of which he was a member, or employé.

If the statute is valid, it was effectual to prevent the plaintiff from enforcing a recovery from the defendant of the commissions he had earned; inasmuch as the procuring of a certificate was made a condition precedent to his right to receive any commissions, or compensation, for his services. (See *Johnston* v. *Dahlgren*, 166 N. Y. 354; *Wood & Selick* v. *Ball*, 190 ib. 217.) If the statute is unconstitutional, then the plaintiff is remitted to his status under the underwriters' agreement and certificate, which, concededly, entitled him to receive from its members certain fixed commissions.

The argument that the invalid provision may be rejected and the rest of the section preserved has been sufficiently answered by the Appellate Division. The opinion of that court holds, in substance, that the requirement as to the statement in the application, in question, was a restriction "imposed upon the issuance of a certificate" and was "a necessary part of the scheme requiring a certificate at all. For how are we able to say whether the Legislature would have required a license without imposing that condition upon its issuance? * * * Subdivision 'd' is the only condition imposed; the other statements required in the application being merely descriptive of the applicant." They say, further, in answer to the suggestion that the superintendent might ignore the invalid provision, that "the argument loses sight of the fact that the Legislature authorized him to issue a certificate only upon an application containing the said statement."

I reach the conclusion that the case was correctly decided below and that the statute, being invalid, was inoperative to defeat the plaintiff's claim. This was the

30

sole question presented by the appeal and I advise that the judgment should be affirmed; but, under the terms of the stipulation, without costs to either party, as against the other.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, CHASE and COLLIN, JJ., concur.

Judgment affirmed.