BARNHILL, J., dissenting.
SEAWELL, J., concurs in dissent.
The defendant was indicted for violating the "Photography Act."
The important provisions of chapter 155, Public Laws 1935, "An act to regulate and control the practice of photography." N.C. Code, 1935 (Michie), sections 7007 (1)-(29).
Section 7007 (1) contains definitions.
Section 7007 (2) provides for the establishment of a State Board of Photographic Examiners to be appointed by the Governor. Subsequent sections provide for its organization, hearings, rules and public record of its proceedings.
Section 7007 (10), "The board shall provide for the examination of applicants who desire to practice photography in this State . . . and issue certificates of registration and licenses to practice photography to anyone who shall qualify as to competency, ability and integrity." Provisions is made for temporary certificates until the next examination.
Section 7007 (11) provides that as a prerequisite to examination the board shall have the power to require proofs as to "technical qualifications, business record and moral character of such applicant."
Section 7007 (13) provides for applications upon forms prescribed by the board and examination fees. "All applicants must appear for examination at the time and place designated by the board and shall present such references and credentials as the board may require and shall give satisfactory evidence as to their competency and fitness to conduct the practice of photography based on their technical knowledge, their business record and their moral character."
Section 7007 (17) — Licenses are not transferable and may not be issued to any person, firm or corporation doing business under an assumed or fictitious name.
Section 7007 (18) — Photographers who have been continuously engaged in the practice of photography and/or photo-finishing in North Carolina for one year next preceding the passage of the act are entitled to a license upon application without examination upon the payment of a specified fee. *Page 676 
Section 7007 (19) provides for annual license fees ($5.00 in the case of a photographer having an established place of business and $3.00 in the case of employees of established places of business.)
Section 7007 (20) prohibits the sale or solicitation of orders for photographic products except by registered license photographers.
Section 7007 (23) provides for the revocation of licenses upon the following grounds: (a) Failure to pay annual license, with liberal provisions for reinstatement; (b) fraud or unethical practices, willful misrepresentation, or upon being found guilty under the laws of North Carolina of any crime involving moral turpitude. Provision is made for notice to accused photographer of charges, which charges must be filed in writing and under oath with the board, representation by counsel, public hearing, attendance of witnesses and stenographic report of proceedings, which shall constitute a record of the board, with provision for an appeal to the Superior Court.
Section 7007 (24) — Violation of the provisions of this chapter is made a misdemeanor and certain fine and imprisonment imposed.
Section 7007 (28) — Exemptions: (a) Newspaper photographers not otherwise selling photographs. (b) Photographs made for experimental purposes or for personal use and pleasure and not sold. (c) Photographs made by employees of State and Federal governments and their political subdivisions or by schools, colleges, universities or other State institutions making photographs for public use in connection therewith and not selling such photographs. (d) Medical practitioners, hospitals, or other institutions making photographs for clinical, surgical or medical purposes. (e) Motion picture photographers.
Section 7007 (29) — The act is made applicable only to cities and towns having a population of more than twenty-five hundred. Photographers whose products retail at unit price of not more than ten cents are exempted.
The State contends that the special verdict establishes all necessary facts to support a verdict of guilty, to wit, practice by the defendant of still commercial portrait photography and photography in other branches without applying for or securing a license and the selling of such products in Winston-Salem, a city of more than 75,000 persons, at unit prices in excess of ten cents per picture by the use of coupons.
The special verdict was as follows:
"In the Superior Court, 10 January Term, 1938.
"The jury, for its verdict, finds: That N. L. Lawrence, a resident of Forsyth County, North Carolina, on or about 16 April, 1937, at and in the county of Forsyth, North Carolina, and within the corporate limits of the city of Winston-Salem, a city at that time having a population in excess of 75,000 persons, did engage in the general business of portrait *Page 677 
photography and did practice general portrait photography and photography in other branches; that is to say, did engage in the profession, occupation or avocation of taking and producing still portrait photographs for hire and profit and selling the same in the State of North Carolina, at unit prices in excess of ten cents per picture, without first having obtained a license to practice photography from the State Board of Photographic Examiners and without being duly licensed and registered by said State Board of Photographic Examiners to practice photography in the State of North Carolina, and without first having filed an application with the State Board for a license to practice photography and without having practiced photography or photo-finishing continuously in the State of North Carolina for one year next preceding the enactment of chapter 155 of the Public Laws of 1935; that the defendant, in the practice of photography, from time to time has issued and sold coupons; that the defendant has paid the State and local license taxes required and authorized by the Revenue Act. If, upon the foregoing facts the court be of the opinion that the defendant is guilty, the jury so finds; otherwise, it finds him not guilty. The court being of the opinion that the defendant is not guilty, the jury so finds not guilty for its verdict. F. Donald Phillips, Judge Presiding."
The State excepted, assigned error to the judgment as signed, and appealed to the Supreme Court.
N.C. Code, 1935 (Michie), section 4649, is as follows: "An appeal to the Supreme Court may be taken by the State in the following cases; and no other: Where judgment has been given for the defendant — (1) Upon a special verdict. (2) Upon a demurrer. (3) Upon a motion to quash. (4) Upon arrest of judgment."
The sole question presented on this appeal: Is chapter 155 of the Public Laws of 1935 (N.C. Code, supra, section 7007 [1]-[29]) — "An act to regulate and control the practice of photography" — constitutional? We think so.
The defendant contends that this statute providing for the regulation and licensing of photographers in North Carolina is unconstitutional and void: In that it violates the Constitution of the United States, Fourteenth Amendment, section 1, which provides: ". . . nor shall any state deprive any person of life, liberty, or property, without due process of law," etc. Also that it violates the following provisions of the Constitution of North Carolina: Article I, section 1: "That we hold *Page 678 
it to be self-evident that all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." Article I, section 17: "No person ought to be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the law of the land." Article I, section 29: "A frequent recurrence to the fundamental principles is absolutely necessary to preserve the blessings of liberty." Article I, section 31: "Perpetuities and monopolies are contrary to the genius of a free state and ought not to be allowed." We cannot so hold.
In S. v. Warren, 211 N.C. 75 (79), the act was not a general State act and was declared unconstitutional. This Court in that case said: "The State can, no doubt, in a State-wide act, make reasonable regulations in regard to the real estate business."
The following are some of the professions and occupations regulated in a similar manner by the statutes of this State: Doctors, lawyers, accountants, contractors, pilots, pharmacists, osteopaths, trained nurses, chiropodists, veterinarians, dentists, architects, barbers, cosmetologists or beauticians, engineers, optometrists, chiropractics, embalmers, real estate brokers and salesmen, midwives.
It goes without saying that photography requires skill. It involves, of course, the use of chemicals, celluloid and other combustible materials and there is a certain fire hazard involved. Photographs, photostats and other means of reproducing likenesses are in general use. They are used every day in the courts to illustrate sworn testimony. Photographs are especially used in railroad and automobile accident cases. The detection of forgeries and altered instruments, finger printing, and kindred matters are accomplished by photography. Such photographs greatly enlarged are frequently used as evidence in the courts. Photographs are commonly used in advertising as taking the place of samples and, therefore, dishonest photographs can lend themselves to the perpetration of fraud. Fake photography and careless and inaccurate photography have been the subject of damage suits. Photography in newspapers and magazines is now used as never before.
In 6 Ruling Case Law, part sec. 199 (Constitutional Law), p. 203 etseq., is the following: "However difficult it may be to render a satisfactory definition of `police power,' there seems to be no doubt that it extends to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals, to the restraint and punishment of crime, and to preservation of the general welfare of the community. Various phrases are used to describe the matters in reference to which it may be exercised. It has been frequently said that it extends to a protection of the public health, safety *Page 679 
and morals, to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the state, and likewise to the promotion of the comfort and welfare of society, and to the enhancement of the public convenience and the general prosperity. It has therefore been stated that, as a general principle, legislation is valid which has for its object the promotion of the public health, safety, morals, convenience, or general welfare, or the prevention of fraud, immorality, or oppression. It has also been said that the police power includes the right of the state to prescribe regulations for the good order, peace, protection, comfort, and convenience of the community, for the preservation of good order and the public morals, the promotion of domestic tranquillity [tranquility], and the comfort and quiet of all persons; and in general that it extends to the enactment of all such wholesome and reasonable laws, not in conflict with the constitution of the state or the United States, as they may deem conducive to the public good." 11 Amer. Jur., pp. 1027, 1044.
The matter of police power has been thoroughly discussed in many decisions in this State in reference to professions and occupations.
In S. v. Call, 121 N.C. 643 (646), it was said: "It is not to be questioned that the law-making power of a state has the right to require an examination and certificate as to the competency of persons desiring to practice law or medicine (citing authorities); to each, to be druggists, pilots, engineers or exercise other callings, whether skilled trades or professions, affecting the public and which require skill and proficiency (citing authorities). To require this is an exercise of the police power for the protection of the public against incompetent and impostors, and is in no sense the creation of a monopoly or special privilege. The door stands open to all who possess the requisite age and good character and can pass the examination which is exacted of all applicants alike."
In S. v. Lockey, 198 N.C. 551 (556) — (Barber Act) — we said: "The police power is elastic, stretching out to meet the progress of the age."
The matter is largely in the discretion of the General Assembly as to what professions and occupations are within the police power of the State and subject to regulation. Of course, due regard must always be had to the provisions of the Constitution of the United States, 14th Amendment, sec. 1, and Constitution of North Carolina, Art. I, sec. 8, and the other provisions before mentioned.
It is equally well settled that no act of the General Assembly ought to be declared violative of any constitutional provision unless the conflict is so clear that no reasonable doubt can arise. Coble v. Comrs., 184 N.C. 342;Gunter v. Sanford, 186 N.C. 452; S. v. Yarboro, 194 N.C. 498;Plott v. Ferguson, 202 N.C. 446; Glenn v. Board of Education, 210 N.C. 525. *Page 680 
The act provides that the board shall issue certificates and licenses "to anyone who shall qualify as to competency, ability and integrity."
Section 7007 (10). These are laudable standards. They are not too vague and indefinite. Competency and ability are required to guard against imposition of an unskilled photographer upon the public which we think is a proper object for the exertion of the police power. Integrity is required to guard against fraud, unethical dealings and sharp practices. The board is required to issue licenses to all applicants who meet these qualifications. It is true that the board is left with discretion to determine competency and ability (by examination — written, oral or practical), and integrity (by furnishing proofs, section 7007 [11]). Proofs are required of lawyers seeking an examination. Particular objection was levied to the reference in the act to the "business record" of applicants, referred to in section 7007 (13). As we read this section, business record is not of itself a test to be applied by the board, but it is a suggested source from which the board may determine the integrity, competency and ability of an applicant. The business record of a photographer is some evidence, or at least a proper subject for the board to consider in applying the three standards enumerated by the Legislature: (1) Competency. (2) Ability. (3) Integrity. The door is open to any applicant possessing these qualifications. Of course, it is true that the Board of Photographic Examiners may conceivedly act arbitrarily in a given case, but so may the Board of Law Examiners, or anyone of the other numerous boards established by the General Assembly. The law furnishes redress in such a case.
In S. v. Lockey, supra, p. 554, we find: "The defendant contends that the General Assembly had no authority to create an expense and arbitrarily and unreasonably classify the citizens and taxpayers of the State and unjustly place the whole burden upon a few thousand of a particular class — the barbers. He further contends that the act makes a further arbitrary and unreasonable classification among the barber themselves in making the act applicable to towns of 2,000 or more population. We think the act constitutional and not arbitrary." Roach v. Durham, 204 N.C. 587
(592).
Taking the entire act and considering it as a whole, we cannot hold it unconstitutional. We cannot say that it is arbitrary or unreasonable or an unconstitutional delegation of legislative authority. We think the conclusion in the brief of the State correct: "It is submitted that the Legislature of North Carolina is the proper division of the State's government to determine in the first instance the need of regulating a given occupation. The Legislature has determined upon good and sufficient ground . . . that it is in the public interest to regulate the licensing and practice of photography. Such regulation falls within the *Page 681 
letter, S. v. Call, supra, and the spirit of the police power, and further that the act contains proper standards of classification, is not arbitrary and should be upheld."
For the reasons given, the judgment of the court below is
Reversed.