[Civ. No. 17511.  First Dist., Div. One.  Sept. 30, 1957.]

JULIUS QUETNICK, Appellant, v. F. BRITTON McCONNELL, as Insurance Commissioner, etc., Respondent.

*Assigned by Chairman of Judicial Council.

Myrick, Deering & Scott and Robert McKibbin Scott for Appellant.

Edmund G. Brown, Attorney General, and Harold B. Haas, Deputy Attorney General, for Respondent.

BRAY, J.—After a hearing, the Insurance Commissioner found petitioner, a licensed insurance broker, guilty of violation of section 760, Insurance Code, revoked his broker's license and issued him a restricted license which prohibited him from transacting "personal or controlled" insurance indefinitely. Petitioner then filed a petition for writ of mandate in the superior court to review the commissioner's order. Petitioner appeals from the judgment on sustaining the demurrer to his amended petition without leave to amend.*

---

*The commissioner's order was stayed during this appeal.

## Questions Presented

1. Is section 760, Insurance Code, unconstitutional in its application to petitioner?

2. Is section 760 in conflict with section 752?

3. Propriety of sustaining demurrer without leave to amend.

4. Propriety of indefinitely suspending privilege of writing "personal or controlled" insurance.

### 1. *Constitutionality.*

Petitioner contends that section 760 is unconstitutional as violative of amendment XIV, section 1, United States Constitution and article I, section 21, California Constitution, in that it discriminates against and treats unequally certain licensees.

Section 760 defines as an "unlawful rebate" the receipt of commissions on premiums on "personal or controlled" insurance payable in any one year which exceed the premiums on other insurance payable in the same year and provides for the suspension, revocation or denial of the license of any broker violating the section. Among other things it defines "personal or controlled" insurance as insurance covering the broker himself, his spouse or employer.

Petitioner's main charge of discrimination under the constitutional provisions above mentioned is that one broker may write more "personal or controlled" insurance than another provided he writes more "other insurance" than the other broker. Thus Broker A who writes only $1,000 in "other insurance" may receive commissions on only $1,000 of "personal or controlled" insurance, while Broker B who writes $5,000 in "other insurance" may receive commissions on $5,000 of "personal or controlled" insurance.

We find in this fact and in the operation of the section itself no unconstitutionality. The section does not control "writing" of "personal or controlled" insurance. A broker may write as much of that type as he desires. However, he may receive commissions on it only equal to the amount of commissions received from other insurance. The reason for the legislative prohibition is to prevent the use of a broker's license to obtain for himself and entities in which he has a financial interest, a preference in premium rates.

Validity of insurance rate regulation has long been upheld. (*German Alliance Ins. Co.* v. *Lewis*, (1913) 233 U.S. 389 [34 S.Ct. 612, 58 L.Ed. 1011, L.R.A. 1915C 1189]; *California*

*State Auto. Assn.* v. *Maloney,* 341 U.S. 105 [71 S.Ct. 601, 95 L.Ed. 788].) As an aid to and means of enforcing such regulations, regulation of commissions is necessary. Thus, section 633b, Political Code (Stats. 1917, p. 1612) required that the insurance policy contain a true statement of the premium to be paid and provided, in effect, that any rebate in such premium was unlawful. In upholding a New Jersey statute requiring insurance agents' commissions to be reasonable and uniform in rate to that of all other agents, the court in *O'Gorman & Young* v. *Hartford Fire Ins. Co.,* 282 U.S. 251, 257 [51 S.Ct. 130, 75 L.Ed. 324, 72 A.L.R. 1163], said : "[L]ack of a uniform scale of commissions allowed local agents for the same service may encourage unfair discrimination among policy holders by facilitating the forbidden practice of rebating."

The predecessor of section 760 was section 633a20, Political Code (Stats. 1931, ch. 277, p. 579.) So far as determining the point at which retention of commissions for "personal or controlled" insurance becomes a rebate, that section was substantially the same as section 760 with the exception that the latter section changed "insurance effected" during the year to "premiums payable." Section 760 is broader in defining "personal or controlled" insurance.

■ Section 760 is protection against the procuring of certain insurance at a lower cost and is in keeping with section 755 which forbids splitting of commissions with unlicensed parties, section 750 forbidding rebates as an inducement on insurance, section 756 forbidding falsification of payrolls as a means of procuring a lower premium, and sections 1850 and 1852 forbidding unfair discrimination in insurance rates. All these regulations are well within the police powers.

■ The fact that under section 760 one licensee may take commissions on more personal and controlled insurance, *dollarwise,* than another does not deny "equal protection" to any licensee. Without this prohibition a licensee could obtain insurance for himself and persons beneficially connected with him at an actual *price* (through the commission allowance) less than that stated in the policy and less than nonbrokers would have to pay. To meet this situation, the Legislature could have prohibited the broker receiving any commission on such insurance. Instead, it allowed the broker to obtain a limited amount of such insurance fixing a point at which it

determined an abuse occurred. That point was where the premiums upon such insurance began to exceed the premiums from all other insurance. This seems to be a reasonable and fair determination. It in nowise dictates the amount of time the licensee spends on his insurance business, since it deals only with premium volume on insurance actually written. Moreover, the requirement that a licensee write proportionately larger amounts of insurance other than "personal or controlled" insurance, is some assurance that the licensee is not obtaining a license merely to obtain a discount on the controlled business. The classification has a direct relation to the evil. to be met. All licensees are subject to the same percentage measurement in determining whether there has been a violation of the section. It should be pointed out that the inequality dollar-wise is no more a violation of the due process or equal protection clause than the practice of taxing real property according to valuation, or of taxing income according to grade percentages.

The cases cited by petitioner are not in point. A mere statement of their facts shows it. *Bueneman* v. *City of Santa Barbara*, 8 Cal.2d 405 [65 P.2d 884, 109 A.L.R. 895], held unreasonable and discriminatory an ordinance taxing laundries doing business in the city whose plants were outside the city, but exempting those with plants within the city. *Baker* v. *Daley*, 15 F.2d 881, held unconstitutional a law prohibiting the occupation of "waving the hair of females" unless the licensee also qualified in the field of massage, removing superfluous hair, manicuring, and arranging, dressing and curling the hair of any female. *Whitcomb* v. *Emerson*, 46 Cal.App. 2d 263 [115 P.2d 892], held unconstitutional an act requiring persons desiring to engage in the business of massage to be trained and experienced, and pass examinations in the various branches of cosmetology which have no direct relationship to the business of massage. In *State* v. *Gleason*, 128 Mont. 485 [277 P.2d 530], a statute requiring examination by a state board as a prerequisite to engaging in commercial photography was held to be unconstitutional. In *Hauser* v. *North British & Mercantile Ins. Co.*, 206 N.Y. 455 [100 N.E. 52, Ann.Cas. 1914B 263, 42 L.R.A.N.S. 1139] the court held invalid a statute which attempted to confine the business of insurance broker to those making sale of insurance their principal business or who should be real estate agents and brokers on the ground that there is no good reason for such restriction  There is nothing like this in our case. Petitioner

can engage in any additional business he desires and may devote to his insurance business only such time as he sees fit. His only restriction is that if he wants discounts on the personal or controlled insurance he writes he must write an equal amount in premiums payable on other business. Otherwise he must forego the percentage of discounts which exceeds the last mentioned premiums.

The validity of section 760 has not been heretofore passed on. However, in *Duntley* v. *Tutt*, 48 Cal.App.2d 367 [119 P.2d 804], the validity of its predecessor section (Pol. Code, § 633a20) was apparently assumed.

2. *Section 760 Does Not Conflict With Section 752.*

The latter section makes it a misdemeanor for any person named in any insurance policy as insured, principal, or obligee or any agent or representative of such person to accept or receive any *unlawful rebate*. It does not define what is an unlawful rebate. Section 760 does. It defines as an unlawful rebate the receipt of commissions on premiums from personal and controlled insurance in excess of an equal amount from other insurance. Thus up to the excess over that amount commissions on premiums on personal or controlled insurance are not rebates. Obviously there is no conflict between the sections.

3. *Sustaining of Demurrer Without Leave to Amend.*

The transcript of the hearing before the commissioner is incorporated in petitioner's amended petition. Therefore in passing upon the demurrer the court had before it all facts revealed by that transcript. (See *Sipper* v. *Urban*, 22 Cal.2d 138, 140 [137 P.2d 425] ; *Kleiner* v. *Garrison*, 82 Cal.App.2d 442, 446 [187 P.2d 57].) Petitioner claims that those facts do not support the court's ruling. Such claim is based upon his contentions (1) that he was not an employee of S & Q Construction Company, and (2) that insurance written for S & Q—Rayor partnership cannot be considered "controlled" insurance. (1) For the year 1952 petitioner's premiums on "other insurance" amounted to $3,483.77, on "personal or controlled" insurance $7,654.91, of which $1,275.96 was on personal insurance and $6,378.95 on S & Q insurance. Petitioner is the salaried president of S & Q Construction Company, a corporation, and owns half of its stock. Not only is the salaried president of a corporation an "employee" in the general sense, but section 760 provides: "Whenever an officer or director of a corporation acts as agent, broker, or solicitor

in the transaction of insurance covering the corporation, he shall be *conclusively presumed* to have received the full commission on such contract while an *employee* of the corporation." (Emphasis added.) This is a complete answer to this contention. (2) S & Q Construction Company entered into a partnership with Rayor Construction Company, a Wyoming corporation. The partnership obtained a construction contract at Travis Air Force Base. In 1953, the second year with which we are concerned, petitioner's premiums from "other insurance" amounted to $4,490.29 and from "personal or controlled" insurance $11,840.56, of which $6,825.27 was premiums on S & Q insurance and $5,015.29 on S & Q-Rayor partnership insurance. ■ Insurance on a joint venture covers liability of the individual partners or joint venturers. (*Reed* v. *Industrial Acc. Com.*, 10 Cal.2d 191 [73 P.2d 1212, 114 A.L.R. 720]; *Goss* v. *Security Ins. Co.*, 113 Cal.App. 577 [298 P. 860].) ■ The insurance contract may treat the partnership as a separate entity for the purpose of segregating one subject of insurance from another, but the liability or loss insured against is that of each partner. (*National Auto. Ins. Co.* v. *Industrial Acc. Com.*, 11 Cal.2d 694 [81 P.2d 928].) It was therefore "controlled" insurance as it "covered" both S & Q and Rayor. ■ Petitioner contends that if the demurrer had not been sustained without leave to amend he could have shown from the record that the insurance written for the partnership was for the benefit of subcontractors and materialmen, and that therefore section 760 does not apply, because the word "covering" in the definition of "personal or controlled" insurance in section 760 refers only to the beneficiaries of the insurance and not to the named assured. That term has many meanings, but the legislative history of the section shows the sense in which it is there used. The predecessor section 633a20 refers to the rebating type of insurance as insurance "on behalf of, or on behalf of the employer of, any agent or broker . . ." The 1935 codification referred to "insurance other than life with himself or his employer as the insured . . ." Under the provisions of section 2, Insurance Code, this is to be construed as a restatement and a continuation and not as a change. In 1937, to broaden the term, the word "covering" was used. It can mean only the person for whom the insurance was written, in behalf of whom it was written. A portion of the insurance was workmen's compensation insurance, as to which the individual workmen would be the beneficiaries. Obviously, for

the purposes of section 760 the term ''covering'' as therein used can only refer to their employer. To interpret ''covering'' as not to refer to the partnership but only to the other beneficiaries of the insurance written by petitioner would completely emasculate the section. Its absurdity is shown in the following example: Assume that an employee of the S & Q Construction Company is an insurance broker. He writes workmen's compensation insurance for the company and writes no other insurance. Petitioner's interpretation of section 760 would free him from liability thereunder unless it could be shown that he was also an employee of the workmen ''covered'' by the insurance.

4. *Propriety of the Order.*

■ The order provides that the inhibition against petitioner writing ''personal or controlled'' insurance shall continue until the commissioner in his discretion removes it. Petitioner contends that this is a fatally indefinite penalty and is not authorized by sections 1690 and 1690.1, Insurance Code, which provide for issuance of a restricted license, where suspension or revocation of a license or denial of a license applied for, would be proper. Petitioner cites 15 American Jurisprudence 103, section 443, referring to Criminal Law, which obviously is not in point. Certainly a restriction is not as indefinite as a complete revocation. The commissioner could have completely revoked petitioner's license. The effect of the order is that instead of revoking all petitioner's license privileges it merely suspended his privilege of writing ''personal or controlled'' insurance. On each renewal of the license the commissioner will be required to determine whether the restriction shall be again imposed for that term. We are not required now to determine what would be a period when the continuance of such restrictions would become unreasonable.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.