[Civ. No. 52741. Second Dist., Div. Two. Aug. 16, 1978.]

CREDIT INSURANCE GENERAL AGENTS ASSOCIATION OF CALIFORNIA, INC., Plaintiff and Appellant, v. GLEESON L. PAYNE, as Insurance Commissioner, etc., Defendant and Respondent.

## COUNSEL

Mathon, Rosensweig & Wapnick and William Rosensweig for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Arthur C. de Goede, Assistant Attorney General, and Richard W. Bakke, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**ROTH, P. J.**—On June 18, 1973, appellant filed its action against respondent for declaratory and injunctive relief, wherein it sought to enjoin enforcement of portions of sections 2248.1-2248.25 of title 10 of the California Administrative Code and particularly section 2248.14(c) there-

of, insofar as they purport to regulate compensation which may be paid to general agents of insurers in the credit insurance industry in California and to obtain an adjudication respondent was without statutory authority to restrict the maximum amount of such compensation.

Following respondent's answer, the trial court granted summary judgment in favor of appellant, having concluded respondent was without the necessary authority. That determination was affirmed on appeal. Our Supreme Court, however, granted hearing and on April 3, 1976, rendered its decision reversing the judgment and remanding the cause to the trial court with directions to enter judgment for respondent. (*Credit Ins. Gen. Agents Assn.* v. *Payne* (1976) 16 Cal.3d 651 [128 Cal.Rptr. 881, 547 P.2d 993].) A petition for rehearing was denied May 6, 1976, and on July 27, 1976, a final judgment was entered. Thereafter, appellant filed its petition for writ of mandate which on October 28, 1976, was peremptorily granted, requiring the trial court to set aside its July 27 judgment and to proceed to consider any issues raised by the pleadings which had not been specifically passed upon in the earlier Supreme Court decision. The parties each filed further motions for summary judgment which were heard February 10, 1977, and judgment was entered in respondent's favor March 9, 1977. Appellant then moved for a new trial or to vacate the judgment and that motion was denied by the trial court's order dated April 27, 1977. Appellant appealed to this court from that order on May 12, 1977.[1]

Appellant asserts the questions presented are:

(1) Whether there is a triable issue of material fact that California Administrative Code, title 10, section 2248.14 as adopted and applied to general agents, is arbitrary, capricious, and overbroad, and lacks evidentiary support in the record.

(2) Whether the appropriate standard of review ought to be broader in this case where constitutional rights are infringed upon than those applied in other quasi-legislative actions.

---

[1]We have considered the appeal on its merits. The time is nigh, however, when the too often misunderstood language of rule 1 of the California Rules of Court will not be taken as sufficient to obviate the admonition of *Rodriguez* v. *Barnett* (1959) 52 Cal.2d 154 [338 P.2d 907].

(3) Whether the regulation of general agent commissions violates Insurance Code section 779.1 in that it tends to prohibit or discourage reasonable competition.

■ We address these contentions in the order stated.

Section 2248.14(c) provides in part: "(c) On and after the effective date of these regulations, July 1, 1973, the maximum amount of total compensation payable on any one case to any creditor . . . irrespective of whether the creditor is licensed as a life and disability agent . . . or is a general agent, shall not exceed 35% of the net premium . . . plus 5% of such net premium to a general agent . . .; provided, however, that if the general agent issues policies and transmits claims to the home office of the insurer, an additional 2½% of the net premium may be paid to such general agent if such additional 2½% is allocated by the insurer to the amount which would otherwise be part of the retention by and of the insurer and the insurer complies with the applicable loss ratio requirements specified in these regulations. . . ."

Part of the basis for the promulgation of this provision consisted of administrative hearings conducted February 22 and 23, 1973. ■ ■ ■ ■ It is not disputed there was then presented extensive testimony regarding the influence of insurance agent commissions on credit insurance owing to the dual phenomena of so-called "captive market" and "reverse competition" factors.[2] (*Credit Ins. Gen. Agents Assn.* v. *Payne, supra,* 16 Cal.3d 651.) ■ This influence was and typically has been considered detrimental to insured debtors if left uncontrolled and therefore an appropriate subject for regulation. Nor do we understand appellant to take issue at this juncture with respondent's ability to reach a conclusion which limits compensation by insurers to creditor agents. Appellant does maintain, however, that the factors mentioned which

[2]"1. 'Captive market' describes the situation where the consumer is unable to 'shop around' for credit insurance since a. he is such a poor credit risk that essentially his only source for the credit needed to purchase the consumer goods is the creditor agent himself, and b. credit insurance is not sold separate and apart from the underlying transaction, and c. the creditor agent offers only the credit insurance of a single insurer.

"2. 'Reverse competition' refers to the competition among insurance companies for the insurance business placed through creditor agents. This concept argues that since the creditor agent represents only one insurance company, insurers will compete for such business by offering higher rates of commission to the creditor agent or by charging higher premium rates, both of which will be of pecuniary benefit to the creditor agent but will have either a neutral or an adverse effect upon the consumer." (Decision of Insurance Commissioner, Ruling No. 186, File No. RH-153 (1973)).

justifiably lead to that result have nothing to do with general agents of the type found within its association and therefore no adequate rationale can be supplied for the limitations imposed upon them by respondent, at least insofar as that rationale could be derived correctly from any evidence which was properly before him. We disagree.

An overriding consideration inherent in regulation of the type here involved is to see that benefits provided insureds are reasonable in relation to premium charges. (Ins. Code, § 779.9.) Of numerous methods which might be employed to effect this end, one consists simply of establishing maximum compensation to agents payable from premiums. The fact that such maximum compensation levels are distributable to creditor agents more liberally than to general agents is not of consequence. So, if it is supportable, e.g., that 40 percent of premium is an outer limit for compensation to all kinds of agents, and it is further established a 35 percent of premium figure is necessary or desirable in favor of creditor agents, the fact that the remaining portion is limited to 5 percent applicable to general agents is not objectionable. And this is true even were it to be the case a given creditor agent required less than the maximum it might enjoy, since the underlying concept of limitation remains the same. Accordingly, appellant's emphatic reliance on the fact the evidence considered by respondent related largely to potential abuses stemming from creditor agents is misplaced, since that same evidence went to the question of acceptable maximum compensation no matter to whom payable. The inquiry, then, is one of adequate benefits to insureds, consistent with ascertained compensation requirements of agents, and this question was answered by respondent based on a totality of data not rendered defective by its closer association to creditor agents than general agents. ■ In view of this analysis and in light of the evidence concededly before respondent, it is not this court's prerogative to weigh the data presented nor to substitute its judgment for that of respondent. (*Ray* v. *Parker* (1940) 15 Cal.2d 275 [101 P.2d 665].) Rather, we are confined to an inquiry whether the result reached by respondent was arbitrary, capricious or entirely lacking in evidentiary support. (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824 [27 Cal.Rptr. 19, 377 P.2d 83].) ■ Our review of the record finds no such infirmity.

■ ■ ■ Appellant's second contention combines various assertions which should lead, it is urged, to our finding constitutional deprivation—i.e., that the right of appellant's members to earn a living

has been diminished, that the commission-compensation limit is confiscatory and that that limit's application is discriminatory with regard to general agents as opposed to those who also engage in the credit insurance business but as so-called "direct writers."[3] ■ We conclude that by whatever standard an appellate court may review a quasi-legislative act (see *California Assn. of Nursing Homes etc., Inc.* v. *Williams* (1970) 4 Cal.App.3d 800 [84 Cal.Rptr. 590, 85 Cal.Rptr. 735]; see also *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]) there is here no basis for the assertion constitutional rights have been infringed. It is conceded respondent has valid statutory authority to regulate general agents in a fashion not available with respect to "direct writer" employees. It must also be accepted respondent possesses the power to limit commissions payable to agents within his statutory control. ■ Finally, it must be admitted the power of the state in effecting otherwise valid economic regulations may be exercised gradually and need not occur in a single encompassing instance.

■ As a result, it is not the case there is any constitutional infringement in the fact appellant's members may be less well able than others to engage in the specific economic pursuit associated with the extension of credit insurance (see *Quetnick* v. *McConnell* (1957) 154 Cal.App.2d 112 [315 P.2d 718]) nor in the fact there exists a limitation on compensation within a given transaction or type of transaction. ■ There is no constitutional right to any particular level of income nor under appropriate circumstances even to pursuit of income in a particular fashion. (See *New Orleans* v. *Dukes* (1976) 427 U.S. 297 [49 L.Ed.2d 511, 96 S.Ct. 2513].)

■ Finally, appellant contends the regulation of general agent commissions is at odds with Insurance Code section 779.1 in its tendency to prohibit or discourage reasonable competition. That section provides: "The purpose of this article is to promote the public welfare by regulating credit life insurance and credit disability insurance. Nothing in this article is intended to prohibit or discourage reasonable competition. The provisions of this article shall be liberally construed."

---

[3] A "direct writer" is one employed by the insurer and compensated by salary rather than commission. It is conceded the remuneration of the direct writer is not subject to respondent's control.

We are of the view the point is not well taken, nor is it adequately supported by anything in the record. It requires little analysis to conclude section 779.1 cannot be understood as meaning every attempt at regulation which produces any kind of anticompetitive effect must fail. The recital, far from itself constituting a prohibition, relates to the purpose of regulation and should be interpreted in view thereof. If the result of respondent's regulations here considered engenders some restraining influence on competition, that is not, of itself, a fatal flaw. Nor has appellant shown by any sufficient evidence an anticompetitive result which would alter this conclusion.

The judgment is affirmed.

Fleming, J., and Beach, J., concurred.